**In the Matter of CHRISTOPHER H. a/k/a C., a child under 18 years of age, to-wit: 2 years.**

No. 49500.

Supreme Court of Oklahoma.

April 11, 1978.

Special Concurring Opinion April 11, 1978.
See 580 P.2d 143.

Charles R. Hogshead, Tulsa, for appellant.

Donald Lee Ritter, Oklahoma City, for appellee.

BERRY, Justice:

This is an appeal from an order of trial court terminating parental rights. Appellant is the natural mother of named child. Appellee is State of Oklahoma ex rel. Department of Institutions, Social and Rehabilitative Services.

The necessary facts commence with the child's first contact with the court. Christopher was declared dependent and neglected at the age of ten months.

The record reveals that in July 1974, a petition was filed alleging the child was dependent and neglected by reason of failure of father to provide support and mental illness of mother. At that time mother was a patient at a mental institution and was alleged to be "emotionally incapable of providing proper care and supervision for said child . . . ." An order sustaining the petition was rendered September 11, 1974.

On May 6, 1975, a motion seeking termination of parental rights was filed. The motion alleged non-support on the part of father. It also alleged the child had been seen at a hospital for a cut on the head; had been seen at the hospital for scratches on the body; and that the mother was unemployed and had no suitable residence for the child. The motion also alleged the mother failed to continue psychological counseling ". . . for her emotional problems which originally caused said child to be dependent-neglected . . . ."

On June 19, 1975, a hearing was held to determine whether to terminate parental rights. The referee who conducted the hearing recommended parental rights of both parents be terminated. On February 20, 1976, the court confirmed referee's findings over objection of appellant. From order terminating her rights appellant appeals. The natural father does not appeal.

Appellant relies upon several propositions of error. We find it necessary to consider only the proposition that trial court erred in confirming the "decision" of the referee in that the "decision" of the referee was not supported by the weight of the evidence and was contrary to law.

Termination of parental rights is purely a creature of statute. The statute which applies in this case is 10 O.S.1971 § 1130. In pertinent part the statute says:

". . . [(A)] court may terminate the rights of a parent to a child in the following situations:

\*　　\*　　\*　　\*　　\*　　\*

"(c) A finding that a parent who is entitled to custody of the child:

"(1) has failed to give the child the parental care or protection necessary for his physical or mental health, or

"(2) although financially able, has willfully neglected to provide the child with the necessary support or education, or

"(3) is unfit by reason of debauchery, intoxication, or habitual use of narcotic drugs, or repeated lewd or lascivious behavior or other conduct that is detrimental to the physical or mental health or morals of the child, and the parent has failed to show that the conditions have been corrected within a period of six (6) months after the child, or children, were adjudged dependent or neglected and a permanent termination of parental custody of the child, or children, is necessary to protect its physical or mental health or morals . . . ."

█ We have acknowledged, although the State has the burden of proof on issues dealing with the liberty of its citizens, after a child is adjudicated within the purview of the juvenile statutes and conditions are proven to be serious enough to warrant § 1130 sanctions, the parent has the burden of coming forward with evidence to show conditions have been changed.

In this case it appears the matters adjudicated when the child was declared dependent and neglected were that appellant was confined in a mental hospital, and she was emotionally incapable of providing proper care and supervision for the child.

As we have said [*Matter of Moore,* Okl., 558 P.2d 371]:

"The hearing provided by § 1130, supra, is merely a continuation of the hearing in which it has already been determined that Appellant has neglected her children, but it affords her the opportunity to show that she has corrected the conditions previously adjudicated . .

"We agree with Appellee that when the hearing [on termination] reconvened . . . the State was not required to show cause again. The Appellee was only required, as the moving party with the ongoing burden of proof, to overcome Appellant's burden of evidence or persuasion on the issue of a change of condition."

The fact that appellant had been confined in a mental hospital and subsequently released has not been presented nor considered in this appeal.

All of the testimony at the hearing on motion to terminate parental rights tends to prove the conditions no longer exist. Obviously, appellant is no longer confined to a mental institution. Testimony of appellant and her witnesses indicates appellant is able to care for the child, that the child was well fed and well dressed while in appellant's custody and that appellant was striving to plan her life around the continued well being of the child.

One of appellee's witnesses was the social worker assigned to appellant. The social worker had been assigned for about nine months at the time of hearing. Appellant and the social worker conferred about two or three times a month, according to the worker's testimony. They discussed such topics as appellant's employment situation, her housing, education, transportation and the child. In short, they discussed those items the social worker perceived as important to appellant's ability to properly care for the child. Significantly the social worker testified she did not discuss with appellant the need to institute professional help with her emotional problems. The only reference the social worker made to such help was appellant's previous stay at the mental hospital.

Appellee also adduced the testimony of a nurse. The nurse was a highly qualified clinical specialist in pediatric mental health. She held a baccalaureate from Duke University in nursing, a master in child psychiatric nursing from Emory University, and had been a consultant in Grady Memorial Hospital at Emory University, consulting from the department of child psychiatry to the department of pediatrics. She was a member and a co-ordinator of the suspected child abuse and neglect team at Grady Memorial, and served [at the time of hearing] in the same capacity at Hillcrest Hospital in Tulsa.

The nurse testified concerning two incidents when appellant and the child came to the hospital. In the first case the child had suffered a cut on the back of his head. In the second he had been slightly injured when appellant was attacked in the home. It is significant that the nurse's testimony was utterly devoid of any inference that appellant had caused the injuries to the child.

The motion to terminate parental rights, as we have mentioned, spoke to facts other than those alleged in the petition to determine the child dependent and neglected. Among those allegations were that the child suffered a cut on his head while in the mother's control, and about a month later suffered two minor scratches on his abdomen while with the mother.

■ The proof adduced shows the first injury to have been the result of childish rambunctiousness and the second to have been inflicted while appellant was being attacked. The law does not require parents to raise children impervious to all injuries of childhood. Nor does the law require a parent, under attack in her own home, to absolutely protect her children from all injury. In this case we see it as rather a positive result that the child was not injured more severely. As it was, he suffered two scratches which, according to appellee's nurse, were not even inconsistent with the kind of injury a small child could do itself.

Appellee, in the motion to terminate parental rights, makes reference to the fact that appellant failed to have the proper medical attention when the child cut his head. The proof went to failure to have stitches removed when the cut healed. The nurse testified the stitches were removed the second time the child was seen at the hospital, and should have been removed much sooner. The proof shows appellant was misled by the social worker as to the availability of transportation to a local clinic, and did not have the means to get the child to the clinic herself. We do not think trial court is justified in terminating parental rights where the fact situation is contributed to by the agent to whom is entrusted the duty to help salvage the family relationship.

We note the history of this case, as related by appellee's witnesses, indicates appellant has managed to preserve her relationship with the child, and plan for the care and welfare of the child upon their reunion. We are mindful that we affirm trial court, in cases of this nature, where the court's decision is not contrary to the weight of the evidence. Accordingly, trial court's order terminating parental rights and confirming findings of referee is reversed, referee's findings are vacated, and this matter is remanded with directions to dismiss the motion to terminate parental rights, filed May 6, 1975, in the trial court, as to appellant. This matter is remanded to the trial court for such further proceedings as may be indicated.

LAVENDER, V. C. J., and DAVISON, WILLIAMS, IRWIN and BARNES, JJ., concur.

SIMMS and DOOLIN, JJ., concur specially.

HODGES, C. J., concurs in result.