1999 OK CIV APP 55

**In the Matter of C.T., C.T., and A.T., Adjudicated Deprived Children.**

**State of Oklahoma, Appellant,**

v.

**Kenny Thompson, Appellee.**

**No. 91,804.**

Court of Civil Appeals of Oklahoma, Division No. 2.

April 27, 1999.

Sarah Hawxby, Assistant District Attorney, Chandler, Oklahoma, for appellant.

James J. Hodgens, James, Gilmore & Hodgens, P.A., Stroud, Oklahoma, for appellee.

## OPINION

BOUDREAU, V.C.J.

¶1 The State of Oklahoma appeals the trial court's order determining that the three minor children of Kenny T. (Father) are deprived with respect to Karen T. (Mother), but not with respect to Father. Having reviewed the record and applicable law, we find that the children are deprived with respect to both parents, and accordingly reverse the trial court's order.

¶2 The three minor children, C̆.T., a male born December 8, 1989; C.T., a male born May 26, 1992; and A.T., a female born August 12, 1993, came into the protective custody of the Oklahoma Department of Human Services (DHS) on May 7, 1998. On that date, a deputy of the Lincoln County Sheriff's Office performed a welfare check and discovered the children at the Chandler home of David and Hazel White.[1] Mr. White was home at the time of the deputy's visit, but was intoxicated and unsure of the children's whereabouts. According to the deputy, the Whites' residence was an unfit and unsafe home for the children.[2] Additionally, all three children were extremely dirty and had head lice as well as physical injuries.[3]

¶3 The deputy later learned that Mother was temporarily residing at the Lincoln Motel, also in Chandler. Although estranged from Mother, Father was staying at the motel with Mother.[4] Both Mother and Father knew the children were residing at the White home, and both were aware of its unsafe and unsanitary condition.[5]

¶4 On May 14, 1998, State filed a petition alleging the children to be deprived. In paragraph four of its petition, State alleged as follows:

4) The State alleges that [C.T., C.T., and A.T.] are deprived children because they do not have proper parental care. Both the Respondent Mother and the Respondent Father have failed to provide the children with safe or adequate housing. At the time they were taken into custody, the home where the children were residing had no running water or electricity and the toilet was overflowing with feces and urine. The only adult in the home was intoxicated and was unsure of where each of the children was. There was no fresh food in the house. Upon questioning, the children stated that [they] had not eaten since lunch on the preceding day.

Although the Respondent children were living in an unsafe and inadequate environment, the Respondent Mother was staying at a hotel at the time the children were taken into custody. The Respondent Father was aware that the Respondent Mother was staying at the hotel and that the Respondent children were residing in the unsafe environment.

¶5 On August 3rd, an adjudicatory proceeding was held and the court heard evi-

---

1. Mrs. White is the children's maternal grandmother. Mother and the children had been residing with the Whites for several months after moving out of Father's residence in Henryetta. According to testimony at trial, the Whites' children were taken into protective custody at the same time.

2. The deputy testified the home had no running water or electricity, it was filthy and dilapidated, the food smelled and appeared to be rotten, and he was unable to find any fresh food. Additionally, he testified that it was a school day and the children should have been in school.

3. Two of the children alleged they had been hit by Mother, and the other child alleged he had been hit by Mr. White.

4. According to Father's testimony, he and Mother were common law married, but had "divorced," and he was currently living with another woman. He testified that he was in Chandler at Mother's request, to assist her in locating a place to live. He also testified that, when he arrived in Chandler, although he attempted to locate housing for Mother and the children, Mother spent much more time "trying to work things out so they could get back together again."

5. Mother told the deputy that Father did not want the children staying with them at the Lincoln Motel. Father testified it was Mother who did not want the children staying with them at the Lincoln Motel.

dence. The trial court then entered its order, finding as follows:

> ... THE COURT FURTHER FINDS that the factual allegations contained in paragraph 4 of the State's Petition are true and correct, but only with respect to the Respondent Mother.
>
> ...
>
> THE COURT THEN FINDS that the Respondent Juveniles, [C.T., C.T., and A.T.], are deprived children with respect to the Respondent Mother and they are hereby made wards of the court.
>
> THE COURT FURTHER FINDS that the Respondent Juveniles, [C.T., C.T., and A.T.], are not deprived children with respect to the Respondent Father.
>
> A DISPOSITIONAL HEARING is set for the 11th day of September 1998, at 10:00 a.m.
>
> THE COURT FINDS that the custody of [C.T., C.T., and A.T.] shall be placed with the Respondent Father pending the outcome of the Dispositional Hearing.

State moved to stay the order, pending appeal. The trial court denied State's motion. State now appeals.

¶ 6 On appeal, State argues that (1) pursuant to 10 O.S.Supp.1998 § 7001–1.3(A)(14), the children are either deprived or not deprived, i.e., they cannot be deprived with respect to Mother and not deprived with respect to Father, and (2) even if they could be adjudicated deprived with respect to Mother but not with respect to Father, based on the facts of this case the trial court abused its discretion in determining the children were not deprived with respect to Father. Our task is to thoroughly review the record in light of the requirements and affirm the trial court's ruling if it is not contrary to the clear weight of the evidence. *In re Christopher H.*, 1978 OK 50, ¶ 19, 577 P.2d 1292, 1295; *see also In re T.H.L.*, 1981 OK 103, ¶ 7, 636 P.2d 330, 333.

 ¶ 7 Section 7001–1.3 of Title 10 of the Oklahoma Statutes, which provides definitions of terms used in the Oklahoma Children's Code, defines "deprived child" as a child:

> a. who is for any reason destitute, homeless, or abandoned, [or]
>
> b. who does not have proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare.
>
> ...

10 O.S.Supp.1998 § 7001–1.3(A)(14). Title 10 O.S.Supp.1998 § 7003–4.5(A) provides:

> If the court finds that the allegations of a petition alleging a child to be deprived are supported by the evidence, and finds that it is in the best interests of the child and the public that the child be made a ward of the court, the court shall sustain the petition, and shall make an order of adjudication finding the child to be deprived and shall adjudge the child as a ward of the court.

Finally, in 10 O.S.Supp.1998 § 7001–1.2, the legislature specifically provides for liberal construction of the Children's Code and indicates the paramount consideration in proceedings concerning a child alleged to be deprived is the best interests of the child. Therefore, we agree with State—the focus in an adjudication proceeding is on the status of the child and not the status of the parent. In light of this stated intention, the only reasonable interpretation of sections 7001–1.3(A)(14) and 7003–4.5(A) is that a child is either deprived or not deprived. In this case, the children were obviously deprived.

¶ 8 Moreover, even if a child could be adjudicated deprived with respect to one parent and not the other, in this instance, Father is also responsible for their deprivation. Father knew of the conditions in which his children were living and did nothing to remedy the situation.

¶ 9 Father argues he could not do anything to help because he was not the custodial parent.[6] Father's argument has no merit.

---

6. As previously mentioned, Father claims he and Mother were common law married, but "divorced." The only evidence regarding Mother's legal custody of the children is the February 12, 1998, handwritten letter of an Okmulgee County associate district judge stating that, since the

Father, though he did not have physical custody of the children, was not divested of his parental responsibility to provide for and protect his children. Between February and May of 1998, Father provided no support for his children, nor did he have any personal contact with them. Even when he saw them in May, residing in conditions he admitted were "not right," Father still did nothing.

¶ 10 In *In re C.A.R.*, 1994 OK CIV APP 124, 882 P.2d 582, another division of this court was presented with similar facts, i.e ., a deprived children proceeding involving a custodial mother and noncustodial father. In that case, the father was aware that the mother had a drug problem while the children were living with her, but chose not to take any action to protect the children. Further, a protective order had been entered directing the father not to go near the mother. *Id.* at ¶ 7, 882 P.2d at 584. The father asserted that only the actions of a custodial parent are relevant to a determination of whether a child is deprived.

¶ 11 Notwithstanding the protective order, the court concluded "[a] father may not delegate parental obligations to the mother and be held harmless when she neglects these obligations." *Id.* at ¶ 13, 882 P.2d at 585 (quoting *In re C.P.*, 103 N.M. 617, 711 P.2d 894, 899 (Ct.App.1985)). As a result, the court held that the failure of the father to

protect his children in turn supported a finding that the children " 'did not have proper parental care' on the part of [the father], and that [the father] was in part responsible for [the children's] home being unfit by 'reason of neglect.' " *Id.* at ¶ 14, 882 P.2d at 585 (quoting 10 O.S. § 7001–1.3(A)(14), renumbered from § 1101(4)(b)).

¶ 12 In this case, the children were discovered by a sheriff's deputy in the most perilous of conditions: truant from school, unsupervised, dirty, hungry, and residing in an unsafe, unsanitary home which had no electricity or running water. We cannot excuse Father's failure to act. Accordingly, we reverse the trial court's order and remand with directions to enter an order finding the children deprived and to proceed with the dispositional phase of this matter.

¶ 13 REVERSED AND REMANDED WITH DIRECTIONS.

STUBBLEFIELD, P.J., and REIF, J., concur.

---

children were born out of wedlock, "in his opinion," Mother was entitled to be the custodial parent. The letter was written when Father removed the children from the home where he and Mother were residing in Henryetta to a different home in Henryetta away from Mother's physical custody. Mother then obtained the letter from the judge and gave it to the police to regain physical custody of the children.