69 P.3d 1226 (2003)
2003 OK CIV APP 43
In the matter of M.J.J., J.P.L., and J.P.G., alleged deprived children, Marie E. Geiss, Respondent/Appellant,
v.
STATE of Oklahoma, Petitioner/Appellee.
No. 97,758.
Court of Civil Appeals of Oklahoma, Division No. 1.
April 4, 2003.
*1227 Eric R. Jones, Ardmore, OK, for Respondent/Appellant.
Mitchell D. Sperry, District Attorney, Ardmore, OK, for Petitioner/Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
Opinion by CAROL M. HANSEN, Judge.
¶ 1 Appellant, Mary E. Geiss (Mother) seeks review of the trial court's order terminating her parental rights as to the minor children, M.J.J., J.P.L., and J.P.G.[1] It is undisputed that the children are members of the Chickasaw Tribe and that this action is subject to the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., as amended, and the Oklahoma Indian Child Welfare Act, 10 O.S.2001 §§ 40 et seq. The purpose of the Oklahoma Act is clarification of state policies and procedures regarding implementation by the state of the ICWA. 10 O.S.2001 § 40.1.
¶ 2 Mother stipulated to the allegations supporting Appellee State's Petitions to have the children adjudicated as deprived. After the children were adjudicated deprived, the trial court established a treatment plan proposed to correct the conditions which led to the adjudication. In December 2001, some ten months after the initial disposition order setting the standards of conduct in the treatment plan, State moved to terminate Mother's parental rights to the three named children. Mother waived her right to a jury trial. The trial court ordered termination and Mother appeals from that order.
¶ 3 In her first proposition, Mother contends the trial court erred by failing to comply with that portion of the ICWA, specifically 25 U.S.C. § 1912(f), as amended, which provides:
No termination of parental rights may be ordered ... in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
¶ 4 Mother argues the trial court's order is fatally defective because the court "makes no reference to the Statute, and more importantly does not state that its determination was made upon a showing of proof beyond a reasonable doubt as specifically required by the Statute." The argument here is thus one of failure to comply with a purported requirement to express a finding in the order, and not failure of evidence to support the trial court's determination. We find this argument has no merit.
¶ 5 While § 1912(f) clearly establishes the trial court standard of proof for termination of parental rights under the ICWA, there is no duty thereunder for the court to express in its order that it has complied with that standard. The cases cited by Mother do not impose that requirement and we have not been made aware of any legal authority which does. The trial court's order sets forth, inter alia, the following findings:
1. There has been compliance with the Indian Child Welfare Act.
2. Continued custody of the children by the parents is likely to result in serious emotional harm to the children.
¶ 6 The order reflects the trial court did expressly set out the ICWA as the legal basis for its determination, and, in statutory language from § 1912(f), articulated the conclusion of law mandated by that section. Mother's argument is very similar to that made to the Georgia Court of Appeals in In the Interest of A.L.L., 211 Ga.App. 767, 440 S.E.2d 517 (1994). The contention there was that the trial court had erred by not stating the "clear and convincing" standard in its order.
¶ 7 The A.L.L. Court found no reversible error, holding "[t]he standard of clear and convincing evidence bound the trial court, *1228 even though those words are not stated in the order", and noted, "[t]he trial judge is presumed to know the law.. and presumed to faithfully and lawfully (perform) the duties devolving upon by the law." (Citations omitted). We find the Court's reasoning in A.L.L. persuasive. The trial court here expressed its compliance with the ICWA and stated the requisite finding in the statutory language of § 1912(f). We will presume the trial court was aware of the standard of proof mandated by § 1912(f) and complied with that standard.
¶ 8 As we understand it, Mother's next contention is that State failed to establish, through an "Indian expert witness", that the continued custody of the children by Mother would be likely to result in serious emotional damage to the children. There is, however, no absolute requirement that the "qualified expert witnesses" necessary for a finding under § 1912(f) be an "Indian expert witness". In the Matter of N.L., 1988 OK 39, 754 P.2d 863.
¶ 9 In N.L., the Oklahoma Supreme Court held, pertaining to expert witnesses under § 1912(f), "[s]pecial knowledge of Indian life is not necessary where a professional person has substantial education and experience and testifies on matters not implicating cultural bias." The Court further held that social workers may qualify as expert witnesses under § 1912(f) if they possess "expertise beyond the normal social worker qualifications."
¶ 10 In the matter before us, State presented the testimony of Sherrie West (West), a social worker for the Chickasaw Nation child welfare department. West testified she was a member of the Chickasaw Nation and was familiar with the culture of that tribe. She further testified the allegations supporting terminationemotional abuse and use of marijuana and other drugswere not consistent with the culture of the tribe. West did not testify regarding the effect of continued custody of the children by Mother.
¶ 11 The substance of West's testimony was that cultural bias was not implicated here. In Matter of N.L., the Oklahoma Supreme Court cited and quoted from State ex rel. Juvenile Department v. Tucker, 76 Or. App. 673, 710 P.2d 793 (1985). In Tucker, the Oregon Court of Appeals noted the issue was whether continued custody of the child by the mother would result in serious emotional harm because of the mother's mental illness. Under the circumstances there, the Court found termination had nothing to do with the mother's fitness to care for the child according to the cultural dictates of her tribe. Similarly, here there is no evidence that Mother's deficiencies were in any way associated with the cultural dictates of her tribe. In fact, the evidence is that there is no such association.
¶ 12 In the absence of implication of cultural bias, the expert witness may be a social worker who possesses expertise beyond the normal social worker qualifications. State presented such a witness, Angela Armstrong (Armstrong), a Department of Human Services (DHS) employee who was the treatment/permanency social worker assigned to help Mother complete the treatment plan. She had been with DHS for four years, and previously had been a counselor for a "therapeutic foster care agency" with training and experience in counseling children with special behavioral problems.
¶ 13 Armstrong testified in detail concerning her efforts to assist Mother with her treatment plan and the condition of the children when removed from Mother's custody and improvements of the children in foster care. Armstrong concluded the children would be "at risk of harm if they were placed in the custody of" Mother. Armstrong possessed expertise beyond that of the normal social worker, that is, counseling children with behavioral problems. Because cultural bias is not implicated in this case, Armstrong is qualified to testify as an expert witness under § 1912(f). Matter of N.L., 754 P.2d at 868.
¶ 14 Armstrong testified J.P.L., who was two years old at the time, had severe behavioral and emotional problems when he was removed from the home. M.J.J., who was nine years old, had to be placed in special education classes. J.P.G. was born after his siblings had been adjudicated deprived and was adjudicated deprived as a *1229 new-born. Mother admitted smoking marijuana while pregnant with J.P.G. M.J.J. and J.P.L. experienced improvement after being removed and when Mother was denied visitation with J.P.L. because his counselor thought the visits would be detrimental. Armstrong testified J.P.L. was still in treatment at the time of trial, that his "behaviors are slowly decreasing" and that his treatment had been a "long, slow road."
¶ 15 Armstrong testified the children needed a stable, structured environment and that J.P.L. needed a lot of nurturing and guidance. She stated she did not believe Mother could provide such an environment. She said M.J.J. had disclosed physical abuse by her step-father, John Patrick Lee (Lee), and that M.J.J. was afraid of him. M.J.J. chose not to have visitation with Mother, partly because she felt Mother had abandoned her for Lee.
¶ 16 Armstrong further testified Mother had not exhibited the ability to protect the children. She had "on numerous occasions" discussed with Mother "what Mr. Lee's done to the children". Mother admitted knowledge of physical abuse, but continued to stay with Lee. Mother did attend counseling regularly for several months, but never satisfactorily completed a course of counseling. On cross-examination, Armstrong testified that when she discussed appropriate housing with Mother, Mother said she did not want to leave Lee. She had also discussed domestic violence with Mother, but neither Mother nor Lee would participate in counseling.
¶ 17 Our review of factual issues in parental termination cases, including those coming under the ICWA, is no different than on any appeal from a judgment on a jury verdict,[2]i.e. where there is competent evidence reasonably tending to support the trial court's judgment, it will not be disturbed on appeal. In re M.D.R., 2002 OK CIV APP 75, 50 P.3d 1160. Legal errors are reviewed de novo. We find no errors of law. There is competent evidence of record to support, beyond a reasonable doubt, the trial court's determination to terminate Mother's parental rights.
¶ 18 AFFIRMED.
JONES, J., and MITCHELL, P.J., concur.
NOTES
[1] The parental rights of John Patrick Lee (Lee) to J.P.L and J.P.G. were also terminated in the same order, but he did not appeal and is not a party here.
[2] In our review, the findings of a trial court sitting without a jury in a case of legal cognizance are to be given the same weight which would be given the verdict of a well-instructed jury. Sides v. John Cordes, Inc., 1999 OK 36, 981 P.2d 301.