180 P.3d 688 (2007)
2008 OK CIV APP 29
In the Matter of M.C.M., J.K.M., and P.M.F., Adjudicated Deprived Children.
State of Oklahoma, Petitioner/Appellee,
v.
Victoria McGann, Respondent/Appellant.
No. 104,075.
Court of Civil Appeals of Oklahoma, Division No. 3.
November 15, 2007.
Certiorari Denied March 3, 2008.
Greg S. Wilson, Wilson Law Firm, Shawnee, OK, for Appellant.
Carrie Hixon, Assistant District Attorney, Shawnee, OK, for Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
AFFIRMED AND REMANDED
LARRY JOPLIN, Presiding Judge.
¶ 1 Respondent/Appellant Victoria McGann (Mother) seeks review of the trial court's order granting judgment on a jury verdict to terminate her parental rights in and to M.C.M., J.K.M., and P.M.F., Adjudicated Deprived Children (Children) on the petition of Petitioner/Appellee State of Oklahoma (State). In this appeal, Mother challenges (1) the trial court's refusal to admit evidence of Children's guardianship, offering a less restrictive permanency plan without termination of her parental rights, (2) the termination of her parental rights under 10 O.S. § 7006-1.1(A)(5), rather than § 7006-1.1(A)(13), and (3) the jury's verdict (a) as contrary to the evidence demonstrating her compliance with the court-ordered treatment plan, and (b) absent evidence of harm to Children resulting from her continued custody.
¶ 2 In June 2005, State filed a petition to adjudicate Children as deprived on allegations of unclean living conditions, and the inadequate care and supervision of Children, subject to the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq., and the Oklahoma Indian Child Welfare Act, 10 O.S. § 40, et seq. On June 24, 2005, the parties appeared with counsel, and, upon their stipulations, the trial court adjudicated Children deprived by order filed July 5. On July 19, 2005, the parties appeared with counsel for disposition, and, by order filed August 16, the trial court adopted a treatment plan for Mother's correction of the underlying conditions.
¶ 3 In June 2006, State filed a Motion to Terminate Parental Rights, and alleged Mother's failure to correct conditions as to warrant termination of her parental rights under 10 O.S. § 7006-1.1(A)(5). On the September trial date, Mother appeared and expressed her willingness to consent to appointment of her sister as Children's guardian. The trial court appointed sister temporary guardian, and continued trial to permit the parties to explore the possibility of a permanent guardianship. Sister subsequently declined to be appointed Children's permanent guardian.
¶ 4 Over two days in November 2006, the parties appeared for jury trial on the merits. State offered evidence concerning the conditions of the home which prompted commencement of this action, and the adjudication of Children as deprived.
¶ 5 Child Welfare Specialists from both the Department of Human Services and the *690 Seminole Nation testified. The D.H.S. caseworker opined that, notwithstanding Mother's partial compliance with the treatment plan, considering Mother's multiple hospitalizations for treatment of her mental health issues, together with her failure to complete parenting classes, to attend counseling with Children, and to exercise regular visitation as ordered, Children were at risk of long-term mental, physical and emotional damage if returned to Mother's custody, and continuation of Mother's parental rights was not in Children's best interests. The tribal caseworker testified concerning the active, but unsuccessful, efforts undertaken to maintain the family unit, and opined that continuation of Mother's parental rights and return of custody to her would subject Children to the risk of serious emotional and physical harm.
¶ 6 Mother offered for admission evidence of her quest for appointment of a guardian for Children. State objected, arguing the evidence was irrelevant and more prejudicial than probative. The trial court sustained State's objection, and refused to admit the evidence.
¶ 7 Mother testified that her husband, the father of M.C.M. and J.K.M., died in April 2005, and that, as a result, she suffered a nervous breakdown. Mother also testified that, for treatment of her condition, she had been hospitalized six times, she had received group and individual counseling, and she had been prescribed medication.
¶ 8 Mother admitted she had no permanent residence. Mother also admitted she had failed to obtain a psychological evaluation, to attend all sessions of the ordered parenting class, to attend counseling with Children, and to exercise regular visitation as prescribed by the treatment plan, but attributed such failures to her hospitalizations, her lack of transportation and the lack of cooperation by the D.H.S. caseworker.
¶ 9 The trial court overruled Mother's demurrer to the evidence and denied her Motion for Directed Verdict. Without objection, the trial court instructed the jury on termination under § 7006-1.1(A)(5) only. On consideration of the evidence, a unanimous jury returned a verdict to terminate Mother's parental rights, and, by order filed December 11, 2006, the trial court entered judgment on the jury's verdict.
¶ 10 In her first proposition, Mother asserts the jury's verdict determining her failure to correct conditions stands contrary to her testimony, and the testimony of the D.H.S. caseworker, that she had substantially complied with, and completed, some of the requirements of the treatment plan at the time State filed the motion to terminate. State responds, arguing that, regardless of the degree of Mother's compliance with the treatment plan, the jury heard competent evidence demonstrating Mother's failure to correct the underlying conditions as to justify termination of her parental rights under § 7006-1.1(A)(5).
¶ 11 Section 7006-1.1(A)(5) permits the termination of parental rights when "the child has been adjudicated to be deprived, and such condition is caused by or contributed to by acts or omissions of the parent, and termination of parental rights is in the best interests of the child, and the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although the parent has been given not less than [three months] to correct the condition." 10 O.S. § 7006-1.1(A)(5)(a-d). State bears the burden of proof, by clear and convincing evidence, of each of the § 7006-1.1(A)(5) elements for termination of parental rights. See, e.g., In the Matter of K.C., 2002 OK CIV APP 58, 46 P.3d 1289; In the Matter of C.G., 1981 OK 131, 637 P.2d 66; In the Matter of Sherol A.S., 1978 OK 103, 581 P.2d 884. Once shown, the burden shifts to the parent(s) to demonstrate the conditions which led to the deprived adjudication have been corrected. In the Matter of J.M., 1993 OK CIV APP 121, 858 P.2d 118; In the Matter of Christopher H., 1978 OK 50, 577 P.2d 1292.
¶ 12 "[F]ailure to comply with the service plan, in itself, is not a ground for termination." K.C., 2002 OK CIV APP 58, ¶ 7, 46 P.3d at 1291; J.M., 1993 OK CIV APP 121, ¶ 4, 858 P.2d at 120. Rather, "[t]he State uses noncompliance with the plan as evidence that parental rights should be terminated because the conditions which led to *691 the deprived adjudication have not been corrected, and parents use compliance with the plan to show that the conditions which led to the deprived adjudication have been corrected." K.C., 2002 OK CIV APP 58, ¶ 7, 46 P.3d at 1291.
¶ 13 On appeal, we review to determine whether the judgment is supported by the requisite clear and convincing evidence. See, e.g., In the Matter of S.B.C., 2002 OK 83, 64 P.3d 1080. In the present case, State introduced clear and convincing evidence demonstrating that Mother had neither a home, transportation, nor employment. Although it appears Mother had attended most of the parenting skills classes at the time State filed its Motion to Terminate, Mother admitted she had not completed the parenting class, had not exercised regular visitation with Children, had not participated in counseling with Children, and had not obtained a psychological evaluation, all as ordered in the treatment plan and fundamental to correction of the conditions which led to the adjudication of Children as deprived. The record contains competent, clear and convincing evidence to support the jury's verdict.
¶ 14 In her second proposition, Mother complains the trial court erred in refusing to admit the evidence of her sister's temporary guardianship of the Children, arguing that, in parental rights termination cases, "`the trial court must . . . determine whether the termination of parental rights to each child is permitted by the statute, is the least restrictive means to protect that child, and is in that child's manifest best interests.'" In the Matter of T.C., 2004 OK CIV APP 65, ¶ 10, 96 P.3d 811, 814. (Emphasis added.) (Citation omitted.) So, says Mother, she was improperly denied the opportunity to demonstrate a "less restrictive alternative" to termination of her parental rights.
¶ 15 In our view, however, T.C. does not support Mother's position. First, the quoted section is drawn from a Florida case, where the intermediate appellate court referred to the "least restrictive means to protect the child" from the risk of harm posed by reunification:
Before parental rights to a child can be permanently and involuntarily severed, there must be clear and convincing evidence that termination is the least restrictive means to protect the child; in other words, that reunification with the parent poses a substantial risk of significant harm to the child.

In re K.A., 880 So.2d 705, 709 (Fla.App.2004). (Emphasis added.) Protection of a child from harm is at the core of Oklahoma parental-rights-termination law. See, e.g., In the Matter of Baby Girl L., 2002 OK 9, ¶ 22, 51 P.3d 544, 555, fn. 7.[1]
¶ 16 Second, and applying the "least restrictive means" analysis, the tribal caseworker reported the unsuccessful attempt to preserve the family unit, and both the D.H.S. caseworker and the tribal caseworker opined that Children faced a substantial risk of physical and emotional harm if returned to Mother's custody. The testimony of the caseworkers constitutes competent evidence supporting a conclusion that termination of Mother's parental rights indeed constituted the least restrictive means of protecting Children from harm.
¶ 17 Ultimately, the trial court is vested with broad discretion in the admission and rejection of evidence, and the Oklahoma Evidence Code permits the exclusion of relevant evidence if the danger of prejudice outweighs its probative value. 12 O.S. § 2403; Cities Service Co. v. Gulf Oil Corp., 1999 OK 14, ¶ 32, 980 P.2d 116, 132. Under the facts and circumstances of this case, and considering the testimony of tribal caseworker to the failed attempt to preserve the family unit, we cannot say the trial court abused its discretion in excluding evidence of the attempted guardianship.
¶ 18 In her third proposition, Mother asserts that her parental rights should not have been terminated under § 7006-1.1(A)(5) for failure to correct conditions. Here, *692 Mother argues that, considering her own uncontroverted testimony establishing her mental illness and the provisions of § 7006-1.1(A)(13) permitting termination of parental rights on account of "a mental illness or mental deficiency . . . which renders the parent incapable of adequately and appropriately exercising parental rights, duties and responsibilities," State should have proceeded under § 7006-1.1(A)(13), and termination of her parental rights under § 7006-1.1(A)(5) will not lie. In the Matter of C.R.T., 2003 OK CIV APP 29, 66 P.3d 1004.
¶ 19 In C.R.T., "State alleged that Mother 'ha[d] severe mental problems which ma[de] it impossible for her to provide for the needs' of [her child] as its ground for the alleged state of deprivation." 2003 OK CIV APP 29, ¶ 2, 66 P.3d at 1006. In the petition for termination of Mother's parental rights, however, State alleged the child's placement in foster care for fifteen of the last twenty-two months, and Mother's failure to correct the conditions leading to the deprived status adjudication, grounds for termination under § 7006-1.1(5) and (15), but "did not specifically allege . . . the mental illness provisions of . . . § 7006-1.1(A)(13)." C.R.T., 2003 OK CIV APP 29, ¶ 4, 66 P.3d at 1006.
¶ 20 After presentation of evidence at trial on the merits, "the trial court instructed the jury as to the State's theory under subsections 5 and 15[,][and] . . ., at Mother's request, as to the elements of subsection 13." C.R.T., 2003 OK CIV APP 29, ¶ 5, 66 P.3d at 1006-1007. Although "[t]he jury's verdict was general and did not specify whether its decision encompassed one or all of State's theories," "the trial court's judgment recited that termination was based upon remaining in foster care for the requisite period of time and for Mother's failure to complete the treatment plan and failure to correct the conditions leading to the deprivation adjudication." 2003 OK CIV APP 29, ¶¶ 5, 6, 66 P.3d at 1007.
¶ 21 On appeal, Mother argued "State should have proceeded solely on allegations under subsection 13." C.R.T., 2003 OK CIV APP 29, ¶ 15, 66 P.3d at 1009. Noting that "[m]ental illness was the basis for the deprived child adjudication and remained as Mother's problem to the time of trial," that Mother's mental illness "[wa]s the condition that must be corrected," and that "the overwhelming evidence . . . show[ed] that the alleged failure to correct the condition follow[ed] and flow[ed] directly from the [mental] condition itself," the Court of Civil Appeals consequently held that the more specific terms of subsection 13 controlled, and the trial court erred in instructing the jury on subsection 5, requiring reversal and remand for new trial. 2003 OK CIV APP 29, ¶¶ 21, 31-32, 37, 66 P.3d at 1010, 1011, 1012.
¶ 22 Assuming, without deciding, that C.R.T. sets forth the proper analysis, State in the present case alleged Mother's failure to maintain sanitary living conditions, and failure to adequately care for and supervise Children, as the basis for the deprived adjudication. Unlike C.R.T., State here never alleged nor sought to prove that Mother's mental state constituted a contributing cause of Children's deprived status. And, unlike C.R.T., Mother here neither objected to the jury instruction on termination under § 7006-1.1(A)(5) only, nor requested a jury instruction on termination under § 7006-1.1(A)(13), ordinarily fatal to review of any complaint beyond one for fundamental error, of which we discern none. 12 O.S. § 578; In the Matter of A.D.W., 2000 OK CIV APP 110, ¶ 7, 12 P.3d 972, 974-975; Sullivan v. Forty-Second West Corp., 1998 OK 48, ¶¶ 5-9, 961 P.2d 801, 802-803.
¶ 23 Further, the conditions in need of correction were not shown as anything other than conditions "the nature of which [were] subject to correction by the parent's efforts," that is, conditions ordinarily within Mother's "ability to correct." C.R.T., 2003 OK CIV APP 29, ¶¶ 16, 18, 66 P.3d at 1009. Beyond her own testimony, Mother presented no corroborating evidence to establish her diagnosed mental condition, or, that her mental condition constituted the "condition" in need of correction, or, that her "alleged failure to correct the condition[s]"-i.e., Children's unsanitary living conditions and their lack of proper care/supervision-"follow[ed] and flow[ed] directly from the [mental] condition *693 itself." C.R.T., 2003 OK CIV APP 29, ¶ 21, 66 P.3d at 1009.
¶ 24 Stated otherwise, Mother demonstrated her ability to undertake steps toward correction of the cited conditions by attending most of the parenting classes. However, Mother admitted that she failed to participate in or substantially complete any of the other terms of the treatment plan, which required her to undergo a psychological evaluation, to attend counseling with Children, and to exercise regular visitation. Beyond her own testimony, Mother presented no evidence that she suffered from some diagnosed mental condition, or that her mental condition caused or contributed to the deprived adjudication, or that her mental condition was the condition in need of correction, or that her mental condition rendered her incapable of correcting the cited conditions. We therefore discern no error as alleged in this proposition.
¶ 25 In her fourth and last proposition, Mother asserts State failed to present the testimony of "qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" as required by the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq., § 1912(f). Mother also asserts the trial court's order lacks findings of compliance with the provisions of the Indian Child Welfare Act, and the Oklahoma Uniform Child Custody Jurisdiction Act, 43 O.S. § 551-101, et seq., as well as specific findings concerning the Children's full legal names and birthdates, all fatal to validity of the trial court's judgment. Rule 8.2, Rules for District Courts of Oklahoma, 12 O.S., Ch. 2, App. 1;[2]In the Matter of M.D.R., 2002 OK CIV APP 75, ¶ 9, 50 P.3d 1160, 1162.
¶ 26 We reject this proposition. First, "[t]here is . . . no absolute requirement that the `qualified expert witnesses' necessary for a finding under § 1912(f) be an `Indian expert witness," and "special knowledge of Indian life is not necessary where a professional person has substantial education and experience and testifies on matters not implicating cultural bias," of which we discern none in the present case. See, In the Matter of M.J.J., 2003 OK CIV APP 43, ¶ 8, 69 P.3d 1226, 1228; In the Matter of N.L., 1988 OK 39, ¶ 18, 754 P.2d 863, 867. Second, where the record reflects compliance with the ICWA and UCCJA, the failure of an order to contain the required compliance statements is not fatal, and the omission may be corrected on remand. In the Matter of T.L., 2003 OK CIV APP 49, ¶ 22, 71 P.3d 43, 48.
¶ 27 We discern no pure error of law or abuse of discretion affecting validity of the trial court's judgment. The record contains competent, clear and convincing evidence showing compliance with both the ICWA and UCCJA, and supporting the trial court's judgment. The order of the trial court is AFFIRMED and the matter REMANDED "with instructions to the trial court to take such actions as are necessary to correct the delineated deficiencies in the final order." T.L., 2003 OK CIV APP 49, ¶ 22, 71 P.3d at 48.
ADAMS, J., and MITCHELL, V.C.J., concur.
NOTES
[1] "A child's best interest is presumably served by custody possessed by the biological parents if this can be done with a reasonable assurance that no abuse or neglect would result from that custody. The State possesses an interest to protect a child from serious physical harm that is sufficient to defeat a claimed parental right to custody if the parent causes the harm." (Citations omitted.)
[2] "All decrees of adoption, divorce or separate maintenance where custody of a minor Indian child or children is given to a third party, all orders of adjudication in juvenile proceedings, termination of parental rights and all final orders in Habeas Corpus and guardianship of the person proceedings resulting in the adjudication of status, custody or wardship of minor children, shall contain a finding of compliance with 25 U.S.C.A. 1901 et seq. (Indian Child Welfare Act of 1978), 10 O.S. 1601 et seq. (Uniform Child Custody Jurisdiction Act)"; "The trial court shall in all such proceedings make findings of fact as to the child's correct, full legal name and date of birth and all instruments memorializing such decrees, orders and judgments as required by 12 O.S. 32.2 shall recite the findings required hereby."