2013 OK CIV APP 33

In the Matter of K.S.; K.S.; R.S., Jr., and R.S., Adjudicated Deprived Children:

Victoria Scott, Appellant,

v.

State of Oklahoma, Appellee.

No. 110,800.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 15, 2013.

Kacey L. Huckabee, Oklahoma City, Oklahoma, for Appellant.

David W. Prater, District Attorney, Valerie L. Baker, Asst. District Attorney, Oklahoma City, Oklahoma, for Appellee.

Alisa Shaddix White, Oklahoma City, Oklahoma, for Minor Children.

BRIAN JACK GOREE, Judge.

¶1 Appellant, Victoria Scott (Mother), seeks review of the trial court's judgment terminating her parental rights to K.S., K.S., R.S., Jr., and R.S. (Children). Appellee, State of Oklahoma (State), moved for a default termination of Mother's parental rights after she failed to personally appear for a court date that the parties considered a pretrial conference, at which she was represent-

ed by counsel. The record on appeal fails to show that Mother was ever served with the statutorily required notice that her failure to personally appear for the hearing on a motion for termination of parental rights would constitute consent to termination. In addition, the record fails to show Mother had any notice that she was to appear for any matter at all on the date in question. Furthermore, the statutory authority to deem failure to appear to constitute consent to termination is limited specifically to the initial or subsequent hearing on a motion or petition to terminate parental rights, and not to just any hearing in the abstract. We reverse and remand for jury trial because the trial court terminated Mother's parental rights without affording her notice and the opportunity to be heard.

¶2 State took Children into emergency custody on January 19, 2011 after a CT scan revealed the infant R.S.'s skull was fractured following a domestic violence incident between Mother and the father (Father) of the two youngest Children. On January 27, 2011, State petitioned for Children to be adjudicated deprived and to terminate Mother's parental rights on the grounds of heinous and shocking neglect. It sought to terminate Father's rights on other grounds.

¶3 State's brief asserts Mother was served with the petition, summons, and notice of a pre-trial hearing. The record contains the petition with a summons and notice attached. The summons includes the language:

> FAILURE TO RESPOND TO THIS SUMMONS OR TO APPEAR AT THIS HEARING CONSTITUTES CONSENT TO THE ADJUDICATION OF THESE CHILDREN AS DEPRIVED CHILDREN AND MAY ULTIMATELY RESULT IN LOSS OF CUSTODY OF THESE CHILDREN OR THE TERMINATION OF PARENTAL RIGHTS TO THESE CHILDREN.[1]

However, the record contains no return of service of this summons and notice. The record does show that the trial court appointed counsel for Mother on February 10, 2011, and Mother appeared with counsel for a pre-trial conference on February 14, 2011. On that date, the trial court reset the pre-trial conference for March 24, 2011 and set jury trial for April 18, 2011.

¶4 State amended its petition on March 15, 2011, to add the father of the two older Children. The petition in the record on appeal contains no summons and notice and no return of service.[2]

¶5 Mother appeared with counsel for the pre-trial conference on March 24, 2011. The court minute states Mother and Father were served with the amended petition. The trial court again continued the pre-trial conference to August 18, 2011 and the jury trial to August 29, 2011. It later reset the pre-trial conference to August 25, 2011. On April 27, 2011, the trial court appointed counsel for Children.

¶6 At the August 25, 2011 pre-trial conference, both fathers failed to appear. State moved for default adjudication and termination as to Father. The trial court found Father was properly served and granted the motion. The other parties, including Mother and her attorney, announced ready for trial. Children's counsel filed her witness and exhibit list and requested jury instructions.

¶7 However, the trial court's minute entry on August 29, 2011, shows the trial court again continued trial, to December 12, 2011, "due to anticipated length of trial and inability to schedule [jury trial] [without] adjournment." The minute order did not reschedule a pre-trial conference.

¶8 The August 29, 2011 minute reflected that the father of the two older Children appeared with his attorney and "stipulated." The trial court set disposition in his matter for October 6, 2011. On that date, it contin-

---

1. 10A O.S. Supp.2009 § 1–4–303(A)(4). This language puts a parent on notice that failure to respond or appear constitutes consent to a deprived adjudication. It is substantially different from the prescribed language of 10A O.S.2011 § 1–4–905(A)(2) which provides notice for termination of parental rights. See footnote 3.

2. We note the docket below contains an entry on March 30, 2011, for a "Notice of Hearing" that was not designated for the record on appeal. The docket entry gives no indication as to whom the notice was directed or whether it was served.

ued the matter to November 10, 2011. On November 10, 2011, it continued the matter to December 8, 2011.

¶ 9 On December 8, 2011, the trial court entered a court minute on the usual pre-printed form. The court minute reflected, by the box checked, that the purpose of the proceeding that day was "Other," and not "Pre-trial." It showed that the father of the older Children appeared with his attorney, and it set hearing in his matter for March 8, 2012.

¶ 10 The December 8, 2011 minute also reflected that Mother's attorney appeared on that date but Mother failed to appear. The minute showed that State orally moved for default adjudication and termination of parental rights as to Mother. The trial court granted the motion and struck the December 12, 2011 trial date. The trial court checked none of the boxes indicating its certification that the minute was delivered to any of the parties.

¶ 11 On December 12, 2011, the trial court entered another minute stating that Mother failed to appear for pre-trial conference on December 8, 2011 and the court granted State's motion for default adjudication and termination of parental rights. This minute also stated the trial date was stricken, and again, no box was checked showing delivery to any party.

¶ 12 On February 13, 2012, the trial court entered a minute denying Mother's motion to set aside the default termination for failure to appear. On May 17, 2012, the trial court entered its journal entry of judgment terminating Mother's parental rights to Children. The journal entry stated the matter came on for hearing on December 8, 2011, and Mother appeared not. It made the following findings, among others:

> 5. THAT the [Children] were adjudicated deprived by the trial court on December 8, 2011, when [Mother] consented to the said adjudication by failing to appear after proper service of the court date;
>
> . . .

7. THAT [Mother] was properly served August 29, 2011 upon receiving personal service in Court of the December 8, 2011 court date;

8. THAT [Mother] failed to appear in Court on December 8, 2011 after being called in open court; . . .

On the same date, the trial court filed its journal entry denying Mother's motion to set aside the default termination.

¶ 13 Mother appeals only from the order terminating her parental rights. She contends the trial court erred in granting default judgment terminating her parental rights because "there is nothing in the record to indicate that [Mother] was aware that her failure to appear at the pre-trial hearing could result in the termination of her parental rights." We agree.

¶ 14 In reviewing a claim that the procedure used in a proceeding to terminate parental rights resulted in a denial of procedural due process, we will review the issue *de novo*. *In re A.M.*, 2000 OK 82, ¶ 6, 13 P.3d 484, 486–87. We will not accept conclusory findings in an order when such findings lack record support and are challenged by the appellant on that basis.

¶ 15 A parent has a basic fundamental right, protected by the United States and Oklahoma Constitutions, to the companionship, care, custody and management of her child. *Gillette v. Gillette*, 2002 OK CIV APP 106, 57 P.3d 888, 891. Before a parent may be deprived of that right, the parent must be accorded the full panoply of procedural and substantive safeguards associated with constitutional protections of fundamental rights. *In re Adoption of Blevins*, 1984 OK CIV APP 41, 695 P.2d 556, 560. The remedy of termination of parental rights exists purely by statute. *In re Christopher H.*, 1978 OK 50, 577 P.2d 1292, 1293. The State may not terminate parental rights except in compliance with the relevant statutes. *In re F.H.G.*, 2012 OK CIV APP 15, ¶ 2, 271 P.3d 100, 101.

¶ 16 The Oklahoma Children's Code, 10A O.S.2011 § 1–4–905 [3] sets forth the re-

---

**3.** 10A O.S.2011 § 1–4–905 provides in part:

A. 1. Prior to a hearing on the petition or motion for termination of parental rights, no-

quirements for notice of a hearing to terminate parental rights. Subsection (A)(2) specifies that the notice must contain language, in capital letters, notifying the parent that failure to personally appear at "this hearing" constitutes consent to termination of the parent's parental rights. Subsection (A)(5) provides, "The failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice."

■ ¶17 The words, phrases, and sentences of a statute are to be understood as used in context and not in any abstract sense. *State ex rel. Rucker v. Tapp,* 1963 OK 37, 380 P.2d 260, 264. The subject matter of § 1–4–905 is notice of the hearing to terminate parental rights. The statute specifies the manner of service, the content, and the time for service of the notice of the hearing to terminate parental rights. When this statute uses the word "hearing," whether it says "this hearing," "the hearing," "a subsequent hearing," or just "hearing," it is referring specifically to "a hearing on the petition or motion for termination of parental rights," and not to just any hearing in the abstract. The intrinsic language of the statute establishes the Legislature's intent that a parent is deemed to consent to termination if the parent fails to personally appear for an initial or subsequent hearing on the motion or petition to terminate parental rights after being given the notice specified.

¶18 The record on appeal in this case fails to establish that either the trial court or the district attorney followed the requirements of this statute. The record is devoid of any notice containing the language, or substantially similar language, of § 1–4–905(A)(2) advising Mother that her failure to personally appear at the hearing on State's motion to terminate her parental rights would constitute her consent to such termination. The summons attached to the initial petition advises Mother that her failure to appear would constitute consent only to a deprived adjudication, not to termination of parental rights. This language of the summons, required by § 1–4–303(A)(4), is not substantially similar to the language of the notice of hearing required by § 1–4–905(A)(2).

¶19 The minute entries of record lack any indication that any issues affecting Mother were set for hearing on December 8, 2011. Although the parties refer to the December 8, 2011 proceeding as a pre-trial conference, the box for "Pre-trial" was not checked on the court minute. According to the record on appeal, the only matter set for December 8, 2011 was disposition of the adjudication as to the father of the older two children.

¶20 The record on appeal fails to establish that Mother was ever given notice that her failure to appear for hearing on State's motion to terminate would constitute consent to termination of her parental rights. Even if she had been given such notice, the record fails to establish that she had notice that she

tice of the date, time, and place of the hearing and a copy of the petition or motion to terminate parental rights shall be served upon the parent who is the subject of the termination proceeding by personal delivery, by certified mail, or by publication as provided for in Section 1–4–304 of this title.

2. The notice shall contain the following or substantially similar language: "FAILURE TO PERSONALLY APPEAR AT THIS HEARING CONSTITUTES CONSENT TO THE TERMINATION OF YOUR PARENTAL RIGHTS TO THIS CHILD OR THESE CHILDREN. IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION OR MOTION ATTACHED TO THIS NOTICE."

3. Notice shall be served upon the parent not less than fifteen (15) calendar days prior to the hearing.

4. Any actual notice of termination of parental rights shall state that the duty of the parent to support his or her minor child will not be terminated except for adoption as provided by paragraph 3 of subsection B of Section 1–4–906 of this title.

5. The failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice. When a parent who appears voluntarily or pursuant to notice is directed by the court to personally appear for a subsequent hearing on a specified date, time and location, the failure of that parent to personally appear, or to instruct his or her attorney to proceed in absentia at the trial, shall constitute consent by that parent to termination of his or her parental rights. . . .

was to appear for any matter at all on December 8, 2011. Furthermore, § 1–4–905 does not authorize the trial court to deem Mother to have consented to termination of her rights by failing to appear for any proceeding other than the hearing on State's motion or petition to terminate parental rights. Therefore, even if Mother had been notified of a pre-trial conference, her failure to attend would not constitute consent to termination of her parental rights. The trial court terminated Mother's parental rights without affording her notice and the opportunity to be heard. For these reasons, the trial court erred in granting State's motion for default termination of Mother's parental rights for her failure to appear on December 8, 2011.

¶ 21 The trial court's journal entries terminating Mother's parental rights and denying her motion to set aside the termination were filed concurrently. Mother appealed only from the former. Therefore, we will not address issues raised in the briefs relating to the latter order.

¶ 22 For the foregoing reasons, the trial court's judgment terminating Mother's parental rights to Children is REVERSED and this matter is REMANDED for jury trial.

MITCHELL, J., concurs.

HETHERINGTON, P.J., dissents.

¶ 23 I respectfully dissent. The relevant version of the statute for termination of parental rights for failure to appear after notice does not prohibit the state from asking for default termination, nor does it limit the trial court from granting such termination at noticed hearings other than a date set for trial on the merits. The bold notice required by 10A O.S.2011 § 1–4–905(A)(2) is not required to be given in notices for any subsequent hearing after summons and service of the motion or petition. While I agree this record shows significant issues with minute orders and the printed, check-the-box forms, I am satisfied Mother was advised in court and/or through her counsel of the December 8, 2011

pre-trial hearing and she failed to appear, allowing for termination.