DARBY, J.:
*765 ¶ 1 The questions presented to this Court are whether 1) the Oklahoma Department of Human Services (DHS) provided reasonable efforts to reunite Mother with Children; 2) the State presented clear and convincing evidence to support the termination of parental rights; and 3) Mother's trial counsel provided effective assistance. We answer all questions in the affirmative.
I. BACKGROUND AND PROCEDURAL HISTORY
¶ 2 On August 27, 2013, DHS removed R.M., C.M., and E.M., then eight (8) years and six (6) months, six (6) years and ten (10) months, and four (4) years and ten (10) months old respectively, from Mother's custody. On September 5, 2013, the State filed a petition in Tulsa County District Court alleging that on August 25, 2013, at approximately 2 a.m., Mother and Children were at the home of some acquaintances who consumed illegal substances in their presence. At the scene, Mother and R.M. began to argue and someone called the police. Mother, who was highly intoxicated, was arrested on a complaint of child abuse for choking R.M. The State alleged in their petition that Mother's actions constituted "neglect, physical abuse, substance abuse by caretaker[,] and failure to provide a safe and stable home." The State requested that the district court adjudicate Children deprived based on the above alleged facts.
¶ 3 On January 21, 2014, Mother entered a non-jury trial stipulation to the allegations of the petition. That day, the Tulsa County District Court accepted Mother's stipulation and adjudicated Children deprived. The district court stated that the conditions to be corrected by Mother were neglect, physical abuse, exposure to substance abuse, and failure to provide a safe and stable home. On February 24, 2014, the district court imposed an individualized service plan (ISP), requiring Mother to correct the above-stated conditions.
¶ 4 On February 2, 2015, the State filed a motion to terminate Mother's parental rights to Children under Title 10A, Sections 1-4-904(B)(5) and (7), alleging Mother had failed to correct the conditions that led to Children being adjudicated deprived and had not contributed to the support of Children. Also on February 2, the district court found that DHS had made reasonable efforts to reunite Mother and Children, and that those efforts had failed; therefore, the court changed the permanency plan to one for adoption. On November 9, 2015, the State filed an amended motion to terminate, again stating grounds for termination under Sections 1-4-904(B)(5) and (7) and adding grounds for termination under Section 1-4-904(B)(15), that Children had been in foster care for fifteen (15) of the most recent twenty-two (22) months. 10A O.S.Supp. 2013, § 1-4-904(B)(15).
¶ 5 The week of November 15, 2016, the Tulsa County District Court held a jury trial on the amended motion to terminate. At trial, the State presented evidence that Children were insistent they did not wish to participate in therapeutic visitation with Mother. Children continued to express significant fear of Mother as well as concern that any changes made by Mother were insincere and superficial. The State also presented evidence that Children consistently made statements regarding prior abuse by Mother.
¶ 6 Children's therapist testified that Children responded to suggestions of visitation with Mother by expressing significant levels of fear in various ways such as by hiding under and behind furniture when her name was brought up, refusing to acknowledge the therapist any time she mentioned Mother, and one child banging his head on the furniture. Children's therapist testified that she read portions of a letter from Mother to Children, delivered gifts and homemade food, showed them a video Mother made, and gave them all copies of a photo of Mother and their family pet. One of the children confirmed *766 the photo was his to do with as he wished before he crumpled it up and threw it away, while another requested a frame for the photo and then cut out Mother's image retaining only the animal's image. Only one child, R.M., ever consented to visitation, but immediately changed his mind - expressing a fear of death if exposed to Mother, even with others present. R.M. told the therapist that he requested to be baptized out of fear for his immortal soul on the chance he was required by the court to visit with Mother.
¶ 7 Children's therapist clarified that her job was not to facilitate therapeutic visitation, but rather to help Children process trauma and engage in healthy behavior. Mother's therapist explained the importance for Children to connect with Mother so they could receive new information about the changes Mother had made. Mother's therapist testified that Mother had requested phone calls between Mother and Children, but stated that the calls were not allowed due to the foster mother's inability to speak Spanish. She also testified that Mother was not allowed photographs or information about the Children through this process. As for DHS, the caseworker testified that due to Children's extreme fear and anxiety towards Mother, visitation was never safe in this case. Therefore, DHS did not provide opportunities for Mother and Children to connect and remain familiar with each other.
¶ 8 On November 18, 2016, the jury unanimously voted to terminate Mother's parental rights to Children under Section 1-4-904(B)(15) only. The district court sustained the jury's verdict and entered a formal order terminating Mother's parental rights on September 21, 2017. Mother appealed with three propositions of error: 1) DHS failed to provide reasonable efforts to reunite Mother and Children; 2) the district court committed reversible error in sustaining the State's motion to terminate as the ruling was not supported by clear and convincing evidence; and 3) ineffective assistance of counsel. We address the issues in the order of occurrence.
II. ANALYSIS
A. Reasonable Efforts to Reunite
¶ 9 Mother first argues that DHS failed to provide reasonable efforts to reunite her and Children. She asserts that there was no legitimate opportunity for reunification because of the lack of visitation. Mother acknowledged that DHS provided counseling for her and Children as well as other services for her to complete her ISP; however, she felt that DHS should have done more to facilitate visitation.
¶ 10 While the record shows that Mother regularly requested visitation throughout the case, Mother's argument fails in light of the rest of the record. Mother and Children all attended extensive counseling. Throughout therapy, Children were insistent that they did not wish to participate in therapeutic visitation with Mother. Children's therapist made numerous efforts to help Children process their trauma, yet none of them were ever willing to see Mother again due to their fear and mistrust.
¶ 11 Where the agent who is entrusted with the duty to help salvage the family relationship contributes to the fact situation warranting the termination of parental rights, the court must stop short of severing the parent-child relationship. In re Christopher H. , 1978 OK 50, ¶ 18, 577 P.2d 1292, 1295 (where social worker misled the parent). In the case at issue, however, no evidence was presented that DHS contributed to the circumstances which justified keeping Mother and Children apart. Instead, DHS set in motion the steps for Mother to complete her ISP within a reasonable time and assigned a caseworker fluent in Mother's native language. DHS also provided extensive therapy to Children.
¶ 12 Mother does not identify any services that DHS failed to offer her other than visitation. The Oklahoma Children's Code provides that:
If the court determines that reunification services are appropriate for the child and a parent, the court shall allow reasonable visitation with the parent or legal guardian from whose custody the child was removed, unless visitation is not in the best interest of the child, taking into consideration :
*767 (1) protection of the physical safety of the child,
(2) protection of the life of the child,
(3) protection of the child from being traumatized by contact with the parent , and
(4) the child's expressed wishes .
10A O.S.2011, § 1-4-707(A)(6)(a) (emphasis added). The State provided extensive evidence that visitation would likely traumatize Children and that Children continued to regularly express their desire to not have any contact with Mother.
¶ 13 In In the Matter of B.T.W. , the mother asserted that there was no opportunity for reunification due to the foster placement and inadequate visitation. In re B.T.W. , 2010 OK 69, ¶ 22, 241 P.3d 199, 211. Throughout the case the mother was allowed some visitation, however, DHS suspended all visitation after B.T.W. became physically sick after a visitation, after which the mother was eventually allowed visitation once per week. Id. ¶¶ 7-8, 241 P.3d at 203-204. The Court noted that the child had initially expressed loving and missing her mother, but over time began to express fearing her. Id. ¶ 17, 241 P.3d at 207. B.T.W. eventually expressed desire that visitations with her mother stop and that she remain with the foster mother. Id. ¶ 18, 241 P.3d at 208.
¶ 14 B.T.W. complained that her mother yelled at her, used foul language, and interfered with her participation in church activities. Id. ¶ 5 n.7, 241 P.3d at 202 n.7. B.T.W. later alleged that her mother twice threatened to choke or strangle her. Id. ¶ 7 nn.14, 16, 241 P.3d at 203 nn.14, 16. The district court, however, opined that the events "did not appear to be much more than words of frustration or anger," and was not concerned that the mother would be physically violent with B.T.W. Id. ¶ 7 n.16, 241 P.3d at 203 n.16.
¶ 15 Two counselors testified that they believed the child's fears of her mother and being returned to her mother's care were genuine. Id. ¶ 20, 241 P.3d at 209. B.T.W.'s therapist recommended ceasing efforts towards reunification and terminating visitation instead. Id. ¶¶ 8, 20, 241 P.3d at 204, 209. The Court noted that DHS provided foster care, monthly visits of the foster home, arranging and supervising visitation, talking with providers, facilitating transportation for B.T.W.'s visits with her mother, and that the mother and B.T.W. attended court-ordered counseling. Id. ¶ 22, 241 P.3d at 211. Therefore, we determined the trial court did not err in finding the state made reasonable efforts towards reunification. Id.
¶ 16 In the present case, unlike In the Matter of B.T.W. , from the time Children were taken into custody, they expressed fear of Mother and desire to not participate in visitation. The State presented evidence that unlike B.T.W. , Children made undeviating disclosures of abuse by Mother which she categorically denied. R.M. described Mother hitting him and his siblings with a belt on their shoulders and legs and slapping them in the face with her hand. R.M. described these incidents as leaving red marks and bruises on various parts of his body. The State also presented evidence of consistent descriptions by the two older children of the incident which had them removed from Mother - where Mother strangled R.M., while C.M. tried to pull Mother off of R.M. and yelled for help.
¶ 17 Children all underwent counseling for two years. Children all expressed fear of seeing Mother again, with a firm basis in their past experiences of abuse from Mother. Like B.T.W. , Children's therapist testified that Children would likely be further traumatized by any further contact with Mother.
¶ 18 Mother alleges that DHS could have allowed phone visitation via an interpreter. Lack of phone calls, however, does not necessarily show a lack of reasonable efforts by DHS, especially in light of the genuine fear expressed by Children here. Further, Title 10A, Section 1-4-707(C)(2) mandates that when reasonable efforts to reunite are required, the time for reunification services may not exceed seventeen (17) months from the date that the child was initially removed from home without compelling reason to the contrary. 10A O.S.2011, § 1-4-707(C)(2). Children had been initially removed from their home seventeen (17) months before the district court found reasonable efforts had failed and changed the permanency plan to adoption. There were no compelling reasons at *768 that time to extend the period for reunification services. We find the district court did not abuse its discretion when it found that DHS made reasonable efforts toward reunification. See In re B.T.W. , 2010 OK 69, ¶ 22, 241 P.3d at 211.
B. Clear and Convincing Evidence
¶ 19 In parental termination cases, the State bears the burden to show by clear and convincing evidence that the child's best interest is served by the termination of parental rights and that Section 1-4-904 requirements have been met. In re J.L.O. , 2018 OK 77, ¶ 29, 428 P.3d 881, 890 ; In re S.B.C. , 2002 OK 83, ¶ 5, 64 P.3d 1080, 1082. Clear and convincing evidence is the degree of proof which produces a firm belief or conviction as to the truth of the allegation in the mind of the trier of fact. In re J.L.O. , 2018 OK 77, ¶ 29, 428 P.3d at 890. Appellate review of a termination of parental rights must show that the record contains clear and convincing evidence to support the district court's decision. Id. Therefore, we review de novo . See id. ; In re S.B.C. , 2002 OK 83, ¶ 7, 64 P.3d at 1083.
¶ 20 The district court terminated Mother's parental rights under Title 10A, Section 1-4-904(B)(15). At that time, the section provided:
(B) The court may terminate the rights of a parent to a child based upon the following legal grounds:
....
15. A finding that a child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months preceding the filing of the petition for termination of parental rights. For purposes of this paragraph, a child shall be considered to have entered foster care on the earlier of:
a. the adjudication date, or
b. the date that is sixty (60) days after the date on which the child is removed from the home.
10A O.S.Supp. 2013, § 1-4-904(B)(15). Children were removed from Mother's home on August 27, 2013, and were adjudicated deprived on January 21, 2014. Therefore, Children "entered foster care" sixty (60) days after removal from the home, on October 26, 2013. Children had been in foster care for fifteen (15) of the past twenty-two (22) months when the original Motion to Terminate parental rights was filed. By the time the Second Amended Motion to Terminate was filed, Children had been in foster care for twenty-four (24) months straight. At the time of trial, Children had been in foster care for three (3) years.
¶ 21 Mother argues that the State failed to prove by clear and convincing evidence that termination of her parental rights was in the best interest of Children. She asserts that the State failed to show that she was responsible for Children being in foster care for the full length of time, as the State did not allow her visitation with the Children in order to eventually be reunited. As previously addressed, we find Mother's argument regarding visitation unpersuasive.
¶ 22 Our primary goal in reviewing a statute is to ascertain the legislative intent. Glasco v. State ex rel. Okla. Dep't of Corr. , 2008 OK 65, ¶ 16, 188 P.3d 177, 184. Where the plain language of the statute does not make known the legislative intent, this Court employs rules of statutory interpretation. Odom v. Penske Truck Leasing Co. , 2018 OK 23, ¶ 18, 415 P.3d 521, 528. We will determine legislative intent by reviewing the whole act in light of its general purpose and objective, considering relevant provisions together in order to give full force and effect to each. Id. Therefore, we must read the relevant portions of Title 10A, Sections 1-4-904,[1] 1-1-102,[2] *769 and 1-4-902[3] together in order to deduce the applicable legislative intent.
¶ 23 Where reasonable efforts to return deprived children to the parents prove fruitless and result in prolonged foster care placement, the Legislature clearly views such extended State custody without possibility of reunification to be so detrimental to the children's best interest as to justify termination of parental rights. See In re M.J. & J.J. , 2000 OK CIV APP 75, ¶ 10, 8 P.3d 936, 939. The jury heard extensive testimony regarding the State's efforts towards reunification which enabled them to make an informed determination on whether termination was in the best interest of Children. The State presented evidence that Mother made significant efforts toward correcting the conditions on her ISP, but that she now denied the allegations of abuse to which she had originally stipulated. Compliance with the ISP alone is not sufficient to regain custody. In re B.C. , 2010 OK CIV APP 103, ¶ 9, 242 P.3d 589, 592.
¶ 24 The State presented evidence that Mother sent pictures, letters, a video, presents, and homemade food for Children with essentially no impact on Children's expressed wishes not to see Mother. Further evidence showed that Children remained adamant in their refusal to see - or for the youngest to even discuss - Mother due to Children's continued fear of Mother, stemming from her behavior prior to removal. The State's evidence was clear that Children made consistent, continuing disclosures of other abuse by Mother and had strong feelings regarding Mother's continued denial of her harmful actions and the events that led to their removal.
¶ 25 We find that the State presented clear and convincing evidence to prove the grounds for termination. Based on that evidence, the jury found termination to be in Children's *770 best interest and recommended the termination of Mother's parental rights. Therefore, we find the district court did not err by terminating Mother's parental rights to Children.
C. Effective Assistance of Counsel
¶ 26 Lastly, Mother claims ineffective assistance of trial counsel. We perform a de novo review on procedural due process claims from a termination of parental rights. In re J.L.O. , 2018 OK 77, ¶ 35, 428 P.3d at 891 ; In re A.M. & R.W. , 2000 OK 82, ¶ 6, 13 P.3d 484, 487. Parents and children have the right to effective assistance of counsel in proceedings terminating parental rights. 10A O.S.2011, § 1-4-306(A) ; In re J.L.O. , 2018 OK 77, ¶ 35, 428 P.3d at 891 ; In re T.M.H. , 1980 OK 92, ¶ 7, 613 P.2d 468, 471 ; In re D.D.F. & S.D.F. , 1990 OK 89, ¶ 15, 801 P.2d 703, 707. We review claims for ineffective assistance of counsel in termination proceedings under the same standard used in criminal trials. In re J.L.O. , 2018 OK 77, ¶ 35, 428 P.3d at 891.
¶ 27 To warrant reversal, the claimant must show that 1) the attorney's performance was deficient, and 2) there is a reasonable probability that, but for the deficient performance, the result would have been different. Strickland v. Washington , 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper measure of attorney performance is reasonableness under prevailing professional norms. Id. at 688, 104 S.Ct. 2052 ; In re J.L.O. , 2018 OK 77, ¶ 36, 428 P.3d at 891. Judicial scrutiny of trial counsel's performance is highly deferential; every effort must be made to avoid hindsight, and the Court must indulge a strong presumption that counsel's conduct falls within the range of reasonable assistance. Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ; In re J.L.O. , 2018 OK 77, ¶ 36, 428 P.3d at 891. The claimant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ; In re J.L.O. , 2018 OK 77, ¶ 36, 428 P.3d at 891. If the claimant shows that counsel erred unreasonably, the claimant must next show that there is a reasonable probability that the result of the proceeding would have been different without the error. Strickland , 466 U.S. at 694, 104 S.Ct. 2052.
¶ 28 Mother claims she received deficient assistance, citing a lack of objections by trial counsel. Mother claims that trial counsel failed to object to inadmissable hearsay regarding statements made by Children to others, irrelevant information in the form of allegations of abuse that occurred prior to adjudication, and improper opinions and speculations by R.M. that his siblings would not be safe with Mother.
¶ 29 It has been recognized that if a party's counsel takes no action, the result is a constructive denial of effective assistance of counsel. In re N.L. , 2015 OK CIV APP 24, ¶ 19, 347 P.3d 301, 304 (citing Young v. State , 1994 OK CR 84, ¶ 9, 902 P.2d 1089, 1090-91 ). Mother argues that "[w]hat is said of inactive counsel is similarly true of low-action counsel, especially where substantial prejudice ensues as in the present case." Mother's claim that her trial counsel was low-action, however, improperly characterizes her counsel's performance. The record shows counsel was extremely active in her efforts, thoroughly questioning all of the State's witnesses and objecting on Mother's behalf.
¶ 30 For her allegation of lack of objections to hearsay statements, especially concerning statements Children made to others, Mother cites generally to the trial transcript. This general citation to the entire 807 page transcript cannot meet the requirement that the claimant affirmatively prove prejudice. See Strickland , 466 U.S. at 693, 104 S.Ct. 2052. Strickland recognized that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Id. Without more specific ineffectiveness claims, we cannot find counsel erred, let alone that the result of the proceeding would have likely been different.
¶ 31 Mother's claim that trial counsel failed to object to the admission of irrelevant evidence is without merit. Mother also makes this claim with a citation to the entire trial transcript, but specifically points to the admission of allegations of abuse which occurred prior to adjudication. This information was clearly relevant to the jury's determination *771 of Children's best interest because it demonstrated the reasons for Children's fear and anxiety - thus why no visitation occurred. In re B.T.W. , 2010 OK 69, ¶¶ 18, 20, 241 P.3d at 207, 209.
¶ 32 Finally, for her claim of lack of objections to improper opinions and speculations of witnesses, Mother cites generally to the trial transcript and gives one specific citation to R.M.'s testimony. We find R.M.'s referenced testimony[4] was proper under Title 12, Section 2701[5] as it was rationally based on his perception, helpful to determination of the best interests of Children, and not based on any scientific, technical, or other specialized knowledge.
¶ 33 Even assuming this testimony was inadmissable, the choice to not object excessively, or to not object to testimony by a vulnerable child, "might be considered sound trial strategy." Mother also fails to articulate a reasonable probability that, but for this testimony from R.M., the result of the termination proceedings would have been different. There was significant evidence in the record to show that R.M. and the other children all were afraid of Mother, due to her prior actions, such that they refused to ever consent to visitation in the three years before trial.
¶ 34 Mother fails to show how trial counsel's actions were not reasonable or that trial counsel's performance prejudiced her, such that but for the alleged errors the result would have been different. Strickland , 466 U.S. at 694, 104 S.Ct. 2052. Counsel's strategic choices were within the range of professionally reasonable judgment. Mother's failure to show deficient performance and sufficient prejudice defeats her ineffectiveness claim. Id. at 700, 104 S.Ct. 2052.
III. CONCLUSION
¶ 35 We find DHS made reasonable efforts to reunite Mother and Children. Children, however, were adamant in their desire not to participate in visitation with Mother. While Mother made efforts to correct conditions, despite her prior stipulation, afterwards she would not admit the abuse for which Children were removed. That Children would somehow be relieved of their extreme fear of Mother when Mother would not admit the abuse she inflicted defies understanding. The evidence was clear and convincing that it was in Children's best interest to terminate Mother's parental rights. Finally, trial counsel for Mother was effective. We find the district court did not err in its judgment granting the State's Motion to Terminate Parental Rights and hereby affirm. We remand to the district court for permanency proceedings.
ORDER OF THE DISTRICT COURT IS AFFIRMED.
Concur: Combs, C.J., Kauger, Winchester, Edmondson, Colbert, Reif, Wyrick, and Darby, JJ.
Concur in Result: Gurich, V.C.J.

A. A court shall not terminate the rights of a parent to a child unless :
1. The child has been adjudicated to be deprived either prior to or concurrently with a proceeding to terminate parental rights; and
2. Termination of parental rights is in the best interests of the child.
B. The court may terminate the rights of a parent to a child based upon the following legal grounds:
....
5. A finding that:
a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
b. the parent has been given at least three (3) months to correct the condition;
....
7. A finding that a parent who does not have custody of the child has, for at least six (6) out of the twelve (12) months immediately preceding the filing of the petition for termination of parental rights, willfully failed or refused or has neglected to contribute to the support of the child:
....
15. A finding that a child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months preceding the filing of the petition for termination of parental rights .
10A O.S.Supp. 2013, § 1-4-904 (emphasis added).

2. A child has a right to be raised by the mother and father of the child as well as a right to be raised free from physical and emotional abuse or neglect. When it is necessary to remove a child from a parent, the child is entitled to a permanent home and to be placed in the least restrictive environment to meet the needs of the child; and
....
B. It is the intent of the Legislature that the Oklahoma Children's Code provide the foundation and process for state intervention into the parent-child relationship whenever the circumstances of a family threaten the safety of a child and to properly balance the interests of the parties stated herein. To this end, it is the purpose of the laws relating to children alleged or found to be deprived to:
....
3. Preserve, unify, and strengthen the family ties of the child whenever possible when in the best interests of the child to do so;
4. Recognize that the right to family integrity, preservation or reunification is limited by the right of the child to be protected from abuse and neglect;
5. Make reasonable efforts to prevent or eliminate the need for the removal of a child from the home and make reasonable efforts to return the child to the home unless otherwise prescribed by the Oklahoma Children's Code;
6. Recognize that permanency is in the best interests of the child ;
7. Ensure that when family rehabilitation and reunification are not possible, the child will be placed in an adoptive home or other permanent living arrangement in a timely fashion ; and
8. Secure for each child the permanency , care, education, and guidance as will best serve the spiritual, emotional, mental and physical health, safety, and welfare of the child .
10A O.S.2011, § 1-1-102(A), (B) (emphasis added).

A. The district attorney shall file a petition or motion for termination of the parent-child relationship and parental rights with respect to a child or shall join in the petition or motion, if filed by the child's attorney, in any of the following circumstances:
1. Prior to the end of the fifteenth month when a child has been placed in foster care by the Department of Human Services for fifteen (15) of the most recent twenty-two (22) months.
10A O.S.2011, § 1-4-902(A)(1) (emphasis added).

[State]: Do you feel like that if you were to go back to your mom that you would be safe?
[R.M.]: No.
[State]: Do you feel like if your siblings were to go back to your mother that they would be safe?
[R.M.]: No.
[State]: Why not?
[R.M.]: Because I don't really trust her.
Trial Tr. 408:6-13, In re C.M., E.M. & R.M. , No. JD-2013-0342 (Tulsa Cty. Dist. Ct. Nov. 17, 2016).

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
1. Rationally based on the perception of the witness;
2. Helpful to a clear understanding of his testimony or the determination of a fact in issue; and
3. Not based on scientific, technical or other specialized knowledge within the scope of Section 2702 of this title.
12 O.S.2011, § 2701 (emphasis added).