IN THE MATTER OF: A.A.

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:IN THE MATTER OF: A.A.

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

IN THE MATTER OF: A.A.2019 OK 34Case Number: 117110Decided: 04/30/2019THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 34, __ P.3d __

FOR PUBLICATION IN OBJ ONLY. NOT RELEASED FOR PUBLICATION.

IN THE MATTER OF: A.A., an Adjudicated Deprived Child.

DEMETRIUS ANDERSON, Appellant,
v.
STATE OF OKLAHOMA, Appellee.

MEMORANDUM OPINION

DARBY, V.C.J.:

¶1 The question presented to this Court is whether the State presented clear and convincing evidence to support termination of the parental rights of Demetrius Anderson (Father). We answer in the affirmative.

I. BACKGROUND AND PROCEDURAL HISTORY

¶2 A.A. (Child) was born in August 2014. Father was present in the hospital on the day of her birth. At that time, Child and Mother tested positive for phencyclidine (PCP). The Oklahoma Department of Human Services (DHS) was notified, and the case was referred to Family Centered Services. Mother entered a residential drug treatment facility, and Child was temporarily placed with a friend until Child later joined Mother at the facility. Shortly after completing treatment, Mother tested positive for PCP and marijuana. In June 2015, when Child was nine (9) months old, DHS removed Child from Mother's home and two (2) months later placed Child with her current kinship foster parent.1 During that time, Father was incarcerated.

¶3 On June 22, 2015, the State filed a petition in Oklahoma County District Court requesting the court adjudicate Child deprived, as to Father, due to a lack of proper parental care and guardianship and because Father's home was unfit due to substance abuse, extensive criminal activity, and failure to protect.2 On June 13, 2016, Father stipulated to the allegations of the petition and agreed that the conditions to correct were "possessing/using illegal drugs/addiction," failure to protect, incarceration due to criminal activity, and lack of proper parental care and guardianship. That day, the district court accepted Father's stipulation, adjudicated Child deprived as to him, and approved Father's individualized service plan (ISP).

¶4 Father failed to attend the next permanency hearing on September 26, 2016, because he was in Oklahoma County jail. Father was released from jail on October 1st and shortly thereafter met with DHS, which referred Father for services consistent with his ISP. Due to no fault of his own, Father was unable to begin services until January 2017. After terminating Mother's parental rights on January 30th, the court reminded Father to be diligent, as he was the only remaining parent in the case. In response, Father was mostly consistent in following his ISP for the next three (3) months, participating in parenting and substance abuse classes and testing negative for drugs.

¶5 Based on that progress, on April 24, 2017, the district court granted Father unsupervised visitation with Child and scheduled the first unsupervised visit to occur the following day. Father, however, abandoned that opportunity and instead was arrested for stabbing a man in the chest with a knife, cutting his heart. Upon his arrest, Father was found to be carrying six (6) individually wrapped bags of marijuana. After he was released on bond on May 20, 2017, Father met with DHS on May 26th to discuss reengaging in services and scheduling visitation. On June 6, 2017, Father had a supervised visit with Child but chose not to schedule further visits due to the uncertainty of his schedule. On June 9, 2017, DHS submitted referrals for Father to resume work on his ISP. Father never contacted DHS again.

¶6 On July 24, 2017, Father appeared at the permanency hearing only long enough to be notified of the next court date in August. On July 27th, the State filed an amended petition seeking to terminate Father's parental rights, pursuant to title 10A, section 1-4-904(B)(5) of the Oklahoma Statutes, for failure to correct conditions. 2d Am. Pet. at 3, In re A.A., No. JD-2015-245 (Okla. Cty. Dist. Ct.). Despite having been notified in court of the August hearing date, Father failed to appear at that permanency hearing where the district court found reasonable efforts to reunite had been made, and then changed the permanency plan to adoption. Because neither the State nor his attorney could locate him, Father also failed to attend the next hearing in September. At the November 2017 permanency hearing, Father was brought from Oklahoma County jail and was personally served in court with the amended petition to terminate his parental rights.

¶7 Regarding his pending criminal charges, Father pled guilty in January 2018 to Assault & Battery with a Dangerous Weapon and Possession of a CDS with Intent to Distribute (Marijuana).3 The court sentenced Father to ten (10) years on each count, to be served concurrently with each other and with three (3) prior sentences.4

¶8 On May 8 and 9, 2018, the Oklahoma County District Court held a jury trial on the termination of Father's parental rights. The State presented testimony from Father, three DHS workers, the foster mother, and the court appointed special advocate. Father, via phone from the penitentiary, testified that he did not believe he currently had a substance abuse problem or a problem staying away from criminal activity. Father characterized the stabbing as an act of self-defense during an argument between friends that got out of hand, and he explained that on reflection, he chose poorly how to best defend himself. Father revealed that after his release on bond he missed a court date for his criminal case, resulting in issuance of an arrest warrant. Father testified that he turned himself in approximately thirty (30) days after the warrant was issued, but asserted the warrant was the reason he was absent from Child's court dates.

¶9 In his testimony, Father agreed that it was unfair for Child to have to wait for his release from prison, but he stated that he also thought it would be unfair if he did not receive another opportunity to correct conditions. Father further testified that he was currently participating in a step-down program, which would move him to a halfway house by the end of the year and allow early release within three (3) to five (5) years based on good behavior. Father admitted that he did not try to call or visit Child or DHS from June to November 2017, even though he was released on bond during that time.

¶10 Father's second DHS case worker testified that he advocated for Father to be granted unsupervised visits with Child. He also contacted Father after the April arrest and attempted to get him working on his ISP again. He testified that despite Father's lack of effort to correct conditions or even to contact Child after June 2017, DHS was still willing to resume visitation, engage in services, and pick up where Father left off. He further testified that based on Father's actions, it was clear that he could succeed, but that he was choosing not to.

¶11 The case worker who took over shortly after Father's arrest testified that he was unable to even locate Father after his release on bond and that Father never made any effort to contact DHS or Child, before or after the State filed the petition to terminate. He further testified that the active warrant did not matter to DHS; rather had Father made any contact, he would have assisted Father and made additional referrals for him. He further explained that he never had the opportunity to supervise visitation or make referrals for Father. He also testified that he believed it was in Child's best interests to terminate Father's parental rights due to Father's failure to engage in services, the instability of foster care, Child's need for permanency, and Father's prison sentences -- which would not allow him to correct conditions for several years.

¶12 The State presented evidence that despite Father's testimony regarding a potential early release, Father had a history of bad behavior while incarcerated -- such as placing bodily fluids on a government employee, escaping from penitentiary (from a halfway house), and in November 2017, having opiates in his possession while in county jail. Multiple DHS workers testified that upon release to a halfway house, Father would be able to begin visitation with Child, but that Father would not be able to begin correcting conditions until after release from the halfway house. The foster mother testified that over the entire history of the case, Father had only called Child one (1) time. Several DHS workers and the special advocate testified as to the importance of stability for Child and about Father's apparent lack of interest in doing the work to be a parent, as evidenced by his unwillingness to even call Child.

¶13 On May 9, 2018, the jury unanimously voted to terminate Father's parental rights to Child under sections 1-4-904(A) and (B)(5). The district court accepted the jury's verdict and filed a journal entry of judgment terminating Father's parental rights on May 14, 2018. Father appealed, arguing that the district court committed reversible error in sustaining the State's motion to terminate because the ruling was not supported by clear and convincing evidence that Father failed to correct conditions or that termination was in Child's best interests. This Court retained the appeal.

II. ANALYSIS

¶14 In a parental termination case, the State bears the burden to show by clear and convincing evidence that the requirements of section 1-4-904 have been met and the child's best interests are served by the termination of parental rights. In re C.M., 2018 OK 93, ¶ 19, 432 P.3d 763, 768; In re J.L.O., 2018 OK 77, ¶ 29, 428 P.3d 881, 890. Clear and convincing evidence produces a firm belief or conviction as to the truth of the allegation in the mind of the trier of fact. In re C.M., 2018 OK 93, ¶ 19, 432 P.3d at 768. We review a termination of parental rights de novo. Id.

¶15 Father alleges that the State failed to prove by clear and convincing evidence that (1) he failed to correct conditions and (2) termination of his parental rights was in the best interests of Child. The district court terminated Father's parental rights under title 10A, sections 1-4-904(A) and (B)(5). Those sections provide:

A. A court shall not terminate the rights of a parent to a child unless:
1. The child has been adjudicated to be deprived either prior to or concurrently with a proceeding to terminate parental rights; and
2. Termination of parental rights is in the best interests of the child.
B. The court may terminate the rights of a parent to a child based upon the following legal grounds:
. . . .
5. A finding that:
a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
b. the parent has been given at least three (3) months to correct the condition . . . .

10A O.S.Supp.2015, § 1-4-904(A), (B)(5).

1. Failure to Correct Conditions

¶16 Under section 1-4-904(B)(5), the State must prove the parent failed to correct the condition that led to the child being adjudicated deprived and that he had been given at least three (3) months to correct that condition. At the time of trial, Father had been given almost two (2) years to correct the conditions that led to Child being adjudicated deprived, namely lack of proper parental care and guardianship, failure to protect, possessing or using illegal drugs, and criminal activity. Father correctly argues that failure to comply with the ISP alone is not grounds for termination; failure to correct conditions that led to deprived adjudication, however, may lead to termination of parental rights. 10A O.S.Supp.2015, § 1-4-904(B)(5). Although Father set out to correct conditions at one point during the proceedings, he then committed additional criminal acts and failed to make any further efforts toward correcting conditions or working on his ISP.

¶17 Prior to his April 2017 arrest, Father maintained consistent living arrangements, completed parenting classes, attended all of the substance abuse classes, and provided almost all required urine screens with negative results. Father corrected conditions to the extent that the court granted unsupervised visitation. The very next day, however, he was arrested for possession of numerous bags of marijuana with intent to distribute and for stabbing a man in the chest with a knife.

¶18 After his release on bond and second DHS referral, Father did not reengage in services. Father's utter lack of participation in his ISP after that point led to his failure to correct conditions. Father did not make any attempt to visit or speak with Child or DHS in the eleven (11) months prior to jury trial. Father was on the lam for months, and DHS was unable to contact him at his residence or make contact with any family members who might know his location. Father failed to show up for additional urine screens, complete substance abuse counseling, or take the steps to be readmitted to the program after being dismissed for lack of attendance while in Oklahoma County jail. Father blamed his inaction on the outstanding arrest warrant and his desire to avoid arrest, yet at no point did he make the effort to communicate that information to DHS. Likewise, the thirty-day window that he claimed justified his absences did not cover all of the court dates he missed.

¶19 On appeal, Father argues that his negative urine screens show that he has corrected this condition and the few missed tests prior to his arrest are not evidence of further correction being required. Father seems to ignore that he was arrested for possession of marijuana with intent to distribute, and that after the State filed its petition to terminate, Father was also found with illegal drugs in his possession while in county jail. Father additionally argues that he had stable housing with his name on the lease. DHS was unable to locate him, however, there or at any other address after his release on bond. Further, after pleading guilty to the charges, Father attempted to shirk responsibility for his criminal actions at the jury trial for termination, describing the stabbing incident as self-defense. We find Father's continued inaction regarding Child, repeated possession of illegal substances, and new criminal convictions are clear and convincing evidence that Father has not corrected the conditions of lack of proper parental care and guardianship, failure to protect, possessing or using illegal drugs, and criminal activity.

2. Best Interests of the Child

¶20 Under title 10A, section 1-4-904(A), the State must prove by clear and convincing evidence (1) that the child was previously or concurrently adjudicated deprived and (2) that termination is in the child's best interests. Consideration of best interests is paramount. In re M.K.T., 2016 OK 4, ¶ 57, 368 P.3d 771, 788. Where reasonable efforts to return a deprived child to the parent are fruitless and result in prolonged foster care placement, extended State custody without progress toward reunification is so detrimental to the child's best interests as to justify termination of parental rights. In re C.M., 2018 OK 93, ¶ 23, 432 P.3d at 769.

¶21 Father stipulated to the relevant conditions, and the court adjudicated Child deprived, as to him, almost two (2) years before the jury trial. The jury heard extensive testimony regarding the State's efforts, which enabled it to make an informed decision on whether termination was in the best interests of Child. Father testified that he had missed court dates due to the outstanding warrant for his arrest, but he failed to give any explanation for why he was incommunicado and did not call DHS or Child for almost a year before trial. The State presented evidence that Father made no effort to correct conditions during that same time, and DHS could not even locate Father for five (5) months before he returned to jail. In contrast, the jury heard evidence of the positive bond Child had with the foster placement and the serious psychological harm that would likely result if Child was removed from the foster family.

¶22 Father's last contact with Child occurred eleven (11) months before the jury trial on June 6, 2017, when Child was two-and-a-half (2 1/2) years old. He never scheduled another supervised visit and never called Child again. The jury heard evidence that Father had an extensive criminal history and would remain incarcerated for at least the remainder of the year. Father would not be fully released from a halfway house for at least three (3) years in order to begin correcting conditions. Under the best-case scenario, Child would be almost seven (7) when Father could restart working on his ISP. If Father did not exhibit model behavior, the time could be significantly extended. The jury also heard evidence of Father's prior misconduct in jail even after this termination proceeding began, evidence which countered the likelihood of best-case scenario timing. We find the State presented clear and convincing evidence that it is in Child's best interests to terminate Father's parental rights.

III. CONCLUSION

¶23 We find clear and convincing evidence that Father failed to correct the conditions that led to Child being adjudicated deprived as to him and that it was in Child's best interests to terminate Father's parental rights. Based on that evidence, the jury found that Child's best interests required the termination of Father's parental rights. We find the district court did not err in its judgment granting the State's petition to terminate Father's parental rights, and we hereby affirm. We remand to the district court for permanency proceedings.

Concur: Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Colbert, Reif, Combs, JJ.

FOOTNOTES

1 Ultimately, the court terminated Mother's parental rights on January 30, 2017, after she relinquished her rights to Child.

2 The petition listed the specific allegations regarding Father and Child as follows:

That [C]hild has not had the proper parental care and guardianship necessary for her physical safety and mental well-being;
That the home of the Father is unfit due to failure to protect;

That [C]hild was removed from the home of the Mother for the reasons stated above and the Father failed to protect [C]hild from said abuse and neglect;
That the Father has an obligation to make reasonable inquiry into the conditions of [C]hild's place of residence and failed to take steps to protect [C]hild;
That the Father has failed to establish paternity as to [C]hild;
That the Father has failed to exercise his parental rights and responsibilities;
That the Father has failed to maintain a significant parental relationship with [C]hild through non-incidental visitation or communication;
That the Father has failed to provide financial support to the best of his ability;

That the home of the Father is unfit due to extensive involvement in criminal activity;

That the Father is currently incarcerated in an Oklahoma Department of Corrections facility;

That the home of Father is unfit due to substance abuse;

That the Father was convicted of Possession of Cocaine Base in Oklahoma County case number CF-2014-6358;

That i[t] would be in the best interest of [C]hild that she be ADJUDICATED DEPRIVED and be made a ward of the Court.

Pet. at 2-3, In re A.A., No. JD-2015-245 (Okla. Cty. Dist. Ct.).

3 State v. Anderson, No. CF-2017-2744 (Okla. Cty. Dist. Ct.).

4 State v. Anderson, No. CF-2012-1096 (Okla. Cty. Dist. Ct.); State v. Anderson, No. CF-2013-5956 (Okla. Cty. Dist. Ct.); and State v. Anderson, No. CF-2014-6358 (Okla. Cty. Dist. Ct.).

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 2016 OK 4, 368 P.3d 771, IN THE MATTER OF M.K.T.Discussed
 2018 OK 77, 428 P.3d 881, IN THE MATTER OF J.L.O.Discussed
 2018 OK 93, 432 P.3d 763, IN THE MATTER OF C.M.Discussed at Length

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA