# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Termination of Parental Rights to K.A.F. | No. 81008-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Crystal Tampico appeals an order terminating her parental rights to her son K.A.F. She contends the trial court erred in concluding the Department of Children, Youth and Families (Department) offered or provided her all court-ordered and necessary services. We affirm the termination order.

## FACTS

Tampico is the mother of K.A.F., born on July 20, 2016.[1] Tampico's parental rights to her three older children were terminated in 2011 and 2012. During 2016, while pregnant with K.A.F., Tampico lived in a car with the father of the child.[2] In May 2016, when Tampico was seven months pregnant, the father informed his drug and

---

[1] Many of these facts are taken from the termination petition, which the trial court adopted as true and correct. Tampico has not assigned error to any of the facts set out therein, and we therefore accept them as verities on appeal. In re Matter of Welfare of A.L.C., 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019).

[2] The father's parental rights as to K.A.F. were terminated on April 12, 2019. He is not a party to this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

alcohol counselor that Tampico was using methamphetamines daily. The counselor reported these concerns to Child Protective Services (CPS).

K.A.F. was born premature and delivered via caesarian section. Tampico was combative, argumentative and abusive with staff at the hospital. They called in a CPS referral due to Tampico's behavior, lack of prenatal care, and concerns about K.A.F's safety in her care. K.A.F. was placed in a secured nursery on a hospital administrative hold. Tampico refused to submit to a blood test, which could have determined whether she had used drugs while pregnant. Her urinalysis test, which could only detect substances used shortly before giving birth, came back negative. K.A.F.'s urine test also came back negative for drugs. After Tampico was discharged from the hospital, she frequently returned to visit K.A.F. while accompanied by security. At one point, Tampico yelled at the baby while feeding him and pushed his hands away from his face. At other times, she left in a hurry without changing his diaper.

The Department filed a dependency petition on July 25, 2016. Tampico agreed to random urinalysis testing for 30 days, but she failed to submit to any testing. In August 2016, Department social worker Denise Huynh was assigned to the case. The court briefly placed K.A.F. with the maternal grandfather, and allowed Tampico to live in the home. On August 24, 2016, however, the court ordered K.A.F. to be placed in licensed care. K.A.F. was subsequently placed in foster care, where he has resided since.

In October 2016, Huynh referred Tampico to random urinalysis testing, a drug and alcohol assessment, mental health counseling, and a psychological evaluation. In February 2017, Tampico was arrested for violating the Controlled Substances Act

2

(VUCSA) and on a warrant for driving with a suspended license. Tampico subsequently participated in a drug and alcohol assessment and a substance abuse assessment, but failed to participate in other services.

On June 23, 2017, the court found K.A.F. dependent as to Tampico after a contested trial. In its dispositional order, the court ordered Tampico to participate in random urinalysis testing for 90 days, follow the recommendations of her most recent drug and alcohol evaluation, attend sober support meetings at least once a week, engage in a psychological evaluation with parenting component and follow through with treatment recommendation, and cooperate with establishing paternity.

Throughout the dependency, the Department repeatedly referred Tampico to services. Although Tampico occasionally communicated with Hunyh and service providers via email, she repeatedly failed to engage in services, to visit K.A.F. on a regular basis, or to make any progress in addressing her parental deficiencies. She did not attend scheduled appointments for her psychological evaluation, did not visit K.A.F. on a consistent basis, and did not provide any urinalysis tests.

In May 2019, after Hunyh retired, social worker Kathy Penn was assigned to the case. Tampico asserted that her failure to engage in services before Hunyh's departure was due to her mistrust of Huynh, who had worked with Tampico during the dependencies of her three older children. She told Penn that she was now ready to engage in services. Penn subsequently referred Tampico to drug and alcohol treatment, urinalysis testing, and a psychological evaluation, but Tampico still failed to follow through. Penn also submitted three visitation supervision referrals, all of which were terminated due to Tampico's chronic failure to appear.

In January 2019, the Department filed a petition to terminate Tampico's parental rights to K.A.F., asserting in relevant part that Tampico "demonstrated an unwillingness to participate in and/or successfully complete services offered to correct parental deficiencies," has untreated substance abuse issues, and "has not expressed a strong desire to reunite with her child."

A termination trial took place on November 4-5, 2019. Tampico was not present. The court admitted 29 exhibits into evidence and considered the testimony of social worker Kathy Penn and court appointed special advocate (CASA) Gwen Baird. Penn testified that Tampico made no progress in remedying her parental deficiencies and was unfit to parent K.A.F. Baird testified that Tampico's behavior "has not changed" and accordingly recommended termination.

On November 26, 2019, the court issued an oral decision terminating Tampico's parental rights as to K.A.F. On December 16, 2019, the court issued written findings of fact, conclusions of law, and a termination order. In its findings, the court determined that all necessary and reasonably available services capable of correcting Tampico's parental deficiencies had been offered or provided and that it would be futile to offer further services. The court also found that Tampico was currently unfit to parent K.A.F. and that termination of the parent-child relationship was in K.A.F's best interest.

Tampico now appeals.

## ANALYSIS

A. Standard of Review

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed.2d 599 (1982). To terminate parental rights, the Department must satisfy a two-step test. In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011). First, the Department must prove the following six statutory elements by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
>
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
>
> (c) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
>
> (d) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . and
>
> (e) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). Evidence is clear, cogent, and convincing if it establishes the ultimate fact in issue as "highly probable." In re Dependency of K.C.S., 137 Wn.2d 918, 925, 976 P.2d 113 (1999) (quoting In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995)). If all six statutory elements are met, the court may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(1). Where the

5

parent's interest conflicts with the child's right to basic nurture, physical health, mental health, and safety, the rights of the child prevail. RCW 13.34.020.

We will uphold the trial court's factual findings if they are supported by substantial evidence. In re Dependency of K.D.S., 176 Wn.2d 644, 652, 294 P.3d 695 (2013). "'[E]vidence is substantial if, when viewed in the light most favorable to the party prevailing below, it is such that a rational trier of fact could find the fact in question by a preponderance of the evidence.'" In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003) (alteration in original) (quoting In re Dependency of M.P., 76 Wn. App. 87, 90-91, 882 P.2d 1180 (1994)). This court does not make credibility determinations or weigh the evidence. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). We defer to the trial court's credibility determinations when reviewing an order terminating parental rights. In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009). Unchallenged findings of fact are verities on appeal. Matter of Welfare of A.L.C., 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019).

B. Court-Ordered and Necessary Services

Tampico contends that the Department failed to prove by clear, cogent and convincing evidence that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided" under RCW 13.34.180(1)(d). She claims that the trial court erred in entering the following finding in the termination order:

> 2.13 Services ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided, including the court-ordered services of:

The Department referred the mother for her psychological evaluation with a parenting component to Steve Tutty, Ph.D. The Department referred the mother for her random urinalysis testing to New Traditions, SRL-Everett, Harborview Medical Center Addictions Program, and Sunrise Centers.

No party has recommended or requested additional services for the parent. It would be futile to offer the mother further services.

A service is "necessary" if it is needed to address a condition that precludes reunification of the parent and child. Matter of I.M.-M., 196 Wn. App. 914, 921, 385 P.3d 268 (2016). The Department must tailor the services it offers to meet each individual parent's needs. In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001). Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services. In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008). "The provision of services is futile where a parent is unwilling or unable to participate in a reasonably available service that has been offered or provided." Matter of K.M.M., 186 Wn.2d 466, 483, 379 P.3d 75 (2016).

Tampico first argues that her prior case history with Huynh substantially contributed to her lack of engagement in necessary services and acted as a barrier to reunification. No evidence in the record supports this conclusion. Both Huynh and Penn referred Tampico to all court-ordered and necessary services, including random urinalysis, substance abuse treatment, and a psychological evaluation. Although Tampico told Penn that her mistrust of Huynh prevented her from engaging in services, her compliance did not improve after Penn was assigned to the case. The mere fact that Huynh was the case worker in the dependencies of Tampico's three

7

older children, without more, does not demonstrate that Huynh's involvement was to blame for Tampico's behavior.

Tampico's reliance on Matter of C.M., 432 P.3d 763 (Okla. Sup. Ct. 2018) is misplaced. In C.M., the mother argued that the Oklahoma Department of Human Services (ODHS) failed to provide reasonable efforts to reunite her and her children. 432 P.3d at 766. The Oklahoma Supreme Court stated that "[w]here the agent who is entrusted with the duty to help salvage the family relationship contributes to the fact situation warranting the termination of parental rights, the court must stop short of severing the parent-child relationship." C.M., 432 P.3d at 766 (citing In re Christopher H., 1978 OK 50, 577 P.2d 1292, 1295). In applying this rule, the court rejected the mother's argument because no evidence was presented that ODHS contributed to the circumstances that justified keeping the mother and children apart. C.M., 432 P.3d at 766. Here, similarly, no evidence supports Tampico's assertion that Huynh contributed to Tampico's failure to engage in services.

Tampico next asserts that the Department failed to provide all ordered services because Penn failed to provide her with new urinalysis referrals after she moved from Camano Island to Seattle in October 2019, approximately one month prior to the termination trial. We disagree. Penn testified that Tampico did request a urinalysis referral in October 2019, but as of the date of trial, Penn had not had a chance to make the referral. Penn further testified that she offered to refer Tampico to urinalysis testing when they met in May 2019, and subsequently referred her to urinalysis testing twice at Tampico's request, but that there was no indication that Tampico ever

8

engaged in that service by the time of trial. Nor did Tampico engage in urinalysis testing while working with Huynh.

Tampico also asserts that the Department failed to provide all necessary services because Penn did not review her entire file and was unaware that she had completed a drug and alcohol assessment and a substance abuse evaluation. But Penn testified that she did offer Tampico substance abuse treatment. Under these circumstances, substantial evidence supports the court's finding that the Department met its burden to provide all necessary services.

Finally, Tampico contends that the Department failed to prove that offering further services would be futile. She asserts that the Department unreasonably forced her to work with Huynh for most of the dependency, and claims that her engagement in services significantly improved after Penn was assigned to her case. As discussed above, the record does not support Tampico's assertions.

Furthermore, even if the Department inexcusably fails to offer or provide all necessary services, termination may still be appropriate if the services would not remedy the parent's deficiencies within the foreseeable future. In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001). "The foreseeable future is determined from the point of view of the child." K.M.M., 186 Wn.2d at 486. Here, three-year old K.A.F. had been placed out of home for nearly his entire life by the time of trial. Penn testified that even if Tampico began engaging in services, it could take up to a year to remedy parental deficiencies. Both Penn and Baird testified that K.A.F. had already waited too long. The court's futility finding was supported by substantial evidence.

9

In addition, Tampico did not challenge the court's findings that:

There is little likelihood that conditions will be remedied so that the child can be returned to his mother within the near future.

Based on this child's age, needs and developmental level, his "near future" for purposes of obtaining permanency is a matter of months, if not weeks. Based on the parent's engagement so far, there is not a basis to find that the parent has the motivation and/or ability to remedy her parental deficiencies within that amount of time. The child is not bonded with the mother, and has had no significant contact with him since he was born.

The mother has not provided the child with a stable home in the past. She has not demonstrated the ability or the commitment to provide the child with a stable home currently, and will not be able to do so in the near future despite the offer of remedial services.

Substantial evidence supports the court's conclusion that all elements of RCW 13.34.180(1) were met and that termination was in K.A.F.'s best interest.

Affirmed.

WE CONCUR:

Andrus, A.C.J.

Mann, C.J.

Leach, J.